**INTEGRATED GENERICS, INC., for-merly known as Patient Medical Systems Corp., Plaintiff,**

v.

**Otis BOWEN, Defendant.**

**No. CV 87–2032.**

United States District Court,
E.D. New York.

Feb. 9, 1988.

David M. Werfel, Stony Brook, N.Y., for plaintiff.

Andrew J. Maloney, U.S. Atty. by Kevan Cleary, Asst. U.S. Atty., Brooklyn, N.Y., for defendant.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

In this action plaintiff Integrated Generics, inc. ("Integrated Generics" or the "Company") challenges certain procedures allegedly adopted by companies charged with the responsibility of processing and paying certain Medicare claims. Plaintiff also alleges that the government has violated statutory, regulatory and constitutional mandates in the handling of the Company's Medicare claims. Declaratory and injunctive relief is sought prohibiting the defendants from continuing to carry out the allegedly illegal course of conduct. In addition, plaintiff seeks the payment of money that is allegedly being withheld pursuant to defendant's unlawful practice.

Named as defendants are the Secretary of Health and Human Services (the "Secretary"), the Director of Operations for the Health Care Financing Administration, the Medical Operations Coordinator for Empire Blue Shield of New York and a Special Agent of the Office of the Inspector General of the Department of Health and Human Services. Each defendant is named solely in his official capacity.

Presently before the Court is a motion filed on behalf of all defendants to dismiss the complaint for lack of subject matter jurisdiction. In the alternative, defendants seek a stay of this action pending the outcome of closely related grand jury proceedings. For the reasons that follow, the motion to dismiss is denied. Because the issues in this case are certainly closely related and, possibly, identical to those likely to be aired in the course of defendants' investigation of the plaintiff, this case is stayed pending the resolution of the grand jury investigation.

### I. The Relevant Statutory and Regulatory Scheme

#### A. The Statutory Administration of Benefits

At issue here are procedures used in the administration of the Health Insurance for the Aged and Disabled Program, otherwise known as Medicare. 42 U.S.C. § 1395 et seq. The Medicare program is divided into two parts. Part A of the program deals with hospitalization benefits. 42 U.S.C. § 1395c–1395i. Part B, the part directly at issue in this lawsuit, is entitled "Supplementary Medical Insurance For Aged and Disabled" and covers, in general, expenses equal to 80% of the reasonable charges for services such as laboratory tests and x-rays. *See* 42 U.S.C. §§ 1395j–1395w.

To provide for the efficient and convenient administration of Part B benefits, Congress has authorized the Secretary to

enter into contracts with companies, known as "carriers," to perform certain functions on behalf of the Secretary. 42 U.S.C. § 1395u. Carriers are authorized to, *inter alia,* determine the rates and amounts of payments made to providers of services, receive and account for funds in making payments to providers and audit the records of providers to ensure that proper payments are made. 42 U.S.C. § 1395u(a)(1).

### B. *Regulations Governing a Provider's Suspected Misconduct*

Several regulations have been promulgated that are addressed to the proper procedures to be followed where fraud or overpayment in connection with the carrier/provider scheme is suspected or proven. Certain regulations provide for the temporary suspension of provider payments while others provide for the more extreme sanction of exclusion from participation in the Medicare program. These regulations allow for action to be taken either by carriers or by the Office of the Inspector General of the Department of Health and Human Services (the "OIG").

### i. *Suspension by Carriers*

Those regulations governing action by the carrier give carriers the right to suspend payments where the carrier has reliable evidence of overpayment or fraud. *See generally* 42 C.F.R. § 405.370. Although the applicable regulations are addressed to the *carrier's knowledge* of suspected misconduct, they do not discuss the *source* of that knowledge. Thus the regulations do not preclude carrier suspension based on information obtained by the government and later communicated to the carrier.

Where payment is suspended due to suspected overpayment, the carrier must notify the provider of the intention to suspend payments and of the reasons for the suspension. Such notification must take place prior to the actual suspension. 42 C.F.R. § 405.371(a). After notification, the provider is given the opportunity to submit a statement and evidence showing why the suspension should not be put into effect. *Id.* In cases where the carrier has reliable

evidence of provider fraud or misrepresentation (as opposed to overpayment) the aforementioned notice requirements do not apply. *See* 42 C.F.R. § 405.371(b). Instead, notice to a provider suspected of fraud or misrepresentation may follow the actual suspension of payments. *Id.*

Whatever the ground cited by the carrier in support of the decision to suspend payments, the suspension amounts to nothing more than a withholding of payments pending the outcome of an investigation. The provider is not precluded from participation in the Medicare program and claims continue to be processed and credited to the provider's account. If it is ultimately found that neither fraud nor overpayment exists, the withheld funds are turned over to the provider.

### ii. *Exclusion by the OIG*

42 C.F.R. Part 1001 ("Part 1001") is addressed to actions taken by the OIG where there is evidence of provider fraud or abuse. *See* 42 C.F.R. § 1001.3. Pursuant to Part 1001, when the OIG determines that certain enumerated fraudulent activities have taken place, the OIG has the power to exclude or terminate a provider from participation in the Medicare program. *See* 42 C.F.R. § 1001.101(a); 42 C.F.R. § 1001.201. If the OIG intends to take such action, it must first comply with the procedures set forth in 42 C.F.R. § 1001.05. Essentially, this section provides that notice of, and the reasons for, the proposed exclusion be sent to the provider prior to the actual termination of benefits.

To summarize, the regulatory framework provides for notice to be given to a provider prior to the taking of action in cases where: (1) the carrier is suspending payment due to overpayment; or (2) the IOG is excluding or terminating a provider from participating in the Medicare program due to fraud or abuse. On the other hand, prior notice is *not* required where a carrier is suspending payment due to suspected fraud. Having outlined the relevant statutes and regulations, the Court turns to a discussion of the facts in the present case.

## II. *Background*

### A. *The Company*

Integrated Generics is a company that, until April of 1986, was engaged in the business of providing durable medical equipment and disposable medical supplies to individuals benefiting from Part B of Medicare. Thus, Integrated Generics was a "provider of services" as that term is used in the Medicare statute. As a provider, the Company received payment for goods through the carrier system described above.

According to the complaint, in the summer of 1985 various carriers working with Integrated Generics began developing "inconsistent, ad hoc" filing instructions regarding the filing of claims. Pursuant to these conflicting instructions, claims were allegedly shifted among various carriers and many claims were not processed for a period of over two years. According to plaintiff, it was eventually agreed that all of Integrated Generics' claims would be processed by Empire Blue Shield of New York ("Empire").

### B. *The Suspension of Payments*

In a letter dated May 8, 1987, Empire advised plaintiff's predecessor corporation that Empire was withholding plaintiff's assigned payments. The May 8 letter stated that payments were being withheld pursuant to those regulations governing the carrier's temporary suspension of payment where there is evidence of fraud, *i.e.*, 42 C.F.R. § 405.371(b). The letter further stated that the decision to withhold payments was made on the basis of notice of an investigation received from the Office of the Inspector General of the Department of Health and Human Services. The reason cited for the suspension of payments was that it was Empire's understanding that the OIG was investigating the issue of "whether claims have been submitted to inappropriate jurisdictions in order to obtain higher rates of reimbursement for seatlift chairs."

### C. *The Complaint*

As noted above, plaintiff's complaint seeks to challenge, *inter alia*, defendants' regulations for the filing of Part B claims. Since the May 8 letter mentioned that claims may have been submitted to inappropriate jurisdictions, plaintiff has been able to tie the government's withholding of payments to plaintiff's allegations about the filing instructions. Essentially, plaintiff's complaint asserts that the OIG's investigation was triggered by plaintiff's inability to comply with the allegedly confusing filing instructions. This lawsuit was thus initiated to determine the validity of the filing instructions and to thereby establish plaintiff's right to the withheld payments.

In addition to seeking the immediate payment of all withheld payments, plaintiff seeks to have this Court hold that defendants' implementation of the filing instructions and defendants failure to give plaintiff notice of the suspension of payments prior to the actual withholding of funds, violates defendants' regulations, the Administrative Procedure Act, the Freedom of Information Act and the Constitution.

## III. *Defendants' Motion to Dismiss*

### A. *Construction of the Complaint*

The motion to dismiss the complaint is predicated on an alleged lack of subject matter jurisdiction. Defendants take the position that plaintiff's complaint is nothing more than an appeal from a decision under 42 C.F.R. § 405.371(b) to withhold payments where a carrier has reliable evidence of fraud. Defendants have carefully outlined the various avenues of appeal from government action relating to the administration of the Medicare program. After this exhaustive review defendants conclude that there is simply no federal jurisdiction to review the decision of a carrier to temporarily suspend payments to a provider where fraud is suspected.

Even if this Court were to agree that there is no right to judicial review of a carrier's decision to withhold payment, a granting of the motion to dismiss would not be warranted. This is because plaintiff's complaint cannot be construed as narrowly as defendants assert. Plaintiff is not, as defendants' assume, seeking only a

review of the carrier's decision to withhold payments. If that were the case, the Court might be inclined to grant defendants' motion. A fair reading of the complaint, however, reveals a much broader attack on defendants' conduct. That attack is addressed to the validity of the filing instructions and to defendant's compliance with existing regulations.

While it is true that a ruling in plaintiff's favor might lead to an order that the withheld funds be immediately paid to plaintiff, such an order would not necessarily accompany such a ruling. An order of immediate payment would be warranted only if it is ultimately found that challenged regulations and government action are illegal *and* that the funds in question are, in fact, being withheld solely because of the allegations set forth in plaintiff's Complaint. Such a conclusion is by no means certain.

Although the May 8 letter mentions the submission of claims to inappropriate jurisdictions, it does not state that the failure to comply with particular filing instructions is the *sole* reason for the government's investigation of the plaintiff Company. Indeed, the government may have other reasons to suspect fraud on the part of the Company and if such is the case, an order of immediate payment would not be warranted even if plaintiff prevails. Moreover, it is anything but clear that plaintiff will prevail on the claim that it was entitled to notice explaining the reason for suspension prior to the actual withholding of payments. As noted above, payments may be suspended pursuant to regulations that do not require prior notice even if the information leading to the suspension comes to the carrier by way of the OIG. Since there is no reason to doubt defendants' representation that payments are being withheld pursuant to such a regulation, it is entirely likely that there has been no violation of existing regulations.

In sum, plaintiff's complaint cannot be characterized only as an appeal from the decision to temporarily withhold payments and it is speculative to state that plaintiff will be entitled to the payment of the withheld funds if it prevails on the claims set forth in this litigation. Thus, the Court cannot grant defendants' motion to dismiss simply upon a finding that no federal jurisdiction exists to review a carrier's decision to temporarily withhold payments on the basis of suspected fraud.

### B. *Existence of Subject Matter Jurisdiction*

Having concluded that plaintiff's complaint cannot be construed only as an appeal from the decision to suspend payments, the Court has little difficulty holding that subject matter jurisdiction exists. Indeed, plaintiff's complaint is precisely the type that the Supreme Court has construed as falling within the subject matter jurisdiction of the federal courts.

In *United States v. Erika,* 456 U.S. 201, 102 S.Ct. 1650, 72 L.Ed.2d 12 (1982), the Supreme Court considered whether a carrier's determination of the amount of Part B benefits to be paid to a provider was subject to judicial review. There, the Court held that Congress "deliberately intended" to deny judicial review of such determinations. *Erika,* 102 S.Ct. at 1654.

The *Erika* decision was examined in *United States v. Bowman,* 476 U.S. 667, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986) where the Court again examined the availability of judicial review of decisions made in connection with the administration of Part B benefits. There, the Court held that "Congress intended to bar judicial review *only* of determinations of the *amount of* benefits to be awarded under Part B." 106 S.Ct. at 2140 (emphasis added). Turning to the question of whether there exists federal subject matter jurisdiction over a complaint questioning the validity of regulations, the Court stated that such attacks were *not* the kind of administrative action described in *Erika* and noted that "challenges to the validity of the Secretary's instructions and regulations, are cognizable in courts of law." 106 S.Ct. at 2141. Since plaintiff's complaint is framed as a challenge to the legality of and the defendants' conformance with regulations, the Court finds that the complaint falls squarely within the bounds of *Bowen* and according-

ly holds that subject matter jurisdiction exists over this lawsuit.

### IV. *Defendants' Motion for a Stay*

■ Since the Court has denied the motion to dismiss the complaint it turns now to consider the motion to stay discovery in this case pending the outcome of the grand jury investigation of the plaintiff Company. According to defendants, a stay is sought to prevent the use of the liberal civil discovery rules to obtain material that is not otherwise available under the criminal procedure rules. Plaintiff vehemently denies any intent to circumvent the criminal procedure rules and states that the discovery sought is directly relevant to the instant lawsuit. Accordingly, the stay is opposed.

At the outset, the Court notes that the decision of whether or not to stay this lawsuit pending the outcome of the grand jury proceeding does not depend solely on whether this Court finds some wrongful intent on the part of the plaintiff to circumvent the criminal discovery rules. While the Court must be sensitive to the differences between the criminal and civil rules, that concern is addressed primarily toward allowing a civil litigant his fair day in court while at the same time ensuring the integrity of the grand jury proceedings. To that end, the Court has the discretion to make whatever ruling it deems proper. *See e.g., Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir.1962), *cert. denied*, 371 U.S. 955, 83 S.Ct. 502, 9 L.Ed.2d 502 (1963); *Securities and Exchange Commission v. Control Metals Corp.*, 57 F.R.D. 56, 58 (S.D.N.Y.1972); *United States v. One 1964 Cadillac Coupe de Ville*, 41 F.R.D. 352, 354 (S.D.N.Y.1966).

While the Court acknowledges that in certain cases limited civil discovery might be allowed to proceed while a criminal investigation is ongoing, *see Campbell*, 307 F.2d at 489, the Court concludes that even such limited discovery would be inappropriate in this case. Here, although the legal theory of the complaint differs from the focus of the grand jury investigation, the facts critical to both proceedings are closely related and may be identical.

If it is true, as plaintiff alleges, that plaintiff's payments are being withheld because of a failure to comply with the challenged regulations, then the validity of the instructions will likely be a key issue in any criminal proceeding. Plaintiff states that it seeks to discover only the extent to which defendants rely on the allegedly invalid regulations. It is difficult to understand how the government could produce the information sought in the civil case without also revealing the focus of the criminal investigation.

On the other hand, a stay of the civil case will not unnecessarily harm plaintiff. The Company is no longer engaged in the business of acting as a provider of Part B benefits. Therefore, there is no element of continuing harm being inflicted because of the necessity of complying with the allegedly illegal regulations. Plaintiff's assertion that the ongoing grand jury investigation is causing harm to its business reputation is not a factor in deciding whether to allow the civil case to go forward. Allowing the civil case to proceed will not lead to disbandment of the grand jury proceeding and thereby cure any injury to plaintiff's reputation in the business community. Indeed, when plaintiff suggests that the issues in the criminal and civil proceedings are different, it concedes that the civil case will not require discontinuing the grand jury proceeding. Thus, plaintiff's affidavit as relating to the ongoing injury to its business reputation is of little weight.

In sum, the Court holds that the most prudent course to take in the instant case is to stay this civil proceeding pending the outcome of the grand jury investigation.

### CONCLUSION

Defendants' motion to dismiss the complaint is denied. Defendants' motion to stay this case pending the outcome of a related grand jury proceeding is granted.

SO ORDERED.