■ HELENA STUART et al., Respondents, v VINCENT TOMASINO et al., Appellants, et al., Defendants. KEVIN GEIGER et al., Respondents, v VINCENT TOMASINO et al., Appellants, et al., Defendants.—Order of the Supreme Court, New York County (Jacqueline W. Silbermann, J.), entered on or about December 23, 1987, which in this consolidation action, *inter alia,* granted a motion by defendant The Dime Savings Bank of New York (The Dime) for summary judgment dismissing the complaint as to it and granted a cross motion by plaintiffs for summary judgment against defendants Vincent Tomasino, Tania Brusse, Robert Tomasino, Paz Realty Company, Inc., and Gramercy Mansions, Ltd. (the Tomasino defendants), unanimously modified on the law to deny plaintiffs' cross motion for summary judgment against the Tomasino defendants and otherwise affirmed, without costs.

While the IAS court properly granted summary judgment dismissal of the action alleging conspiracy, fraud and negligence against The Dime, the record reveals the existence of issues of fact sufficient to warrant denial of summary judgment in favor of plaintiffs against the Tomasino defendants.

Both groups of plaintiffs and the Tomasino defendants cross-appeal from an order of the IAS court which, in addition to granting summary judgment dismissal of the complaint against The Dime and in favor of plaintiffs against the Toma-

sino defendants, granted plaintiffs leave to file a supplemental summons and amended complaint adding Marilyn Brisman, Esq., as a party defendant, granted plaintiffs leave to serve an amended complaint seeking declaratory relief as to the Tomasino defendants and denied a motion by the Tomasino defendants for a protective order without prejudice to their right, if any, to object to particular questions on the basis of their right against self-incrimination under the Fifth Amendment of the US Constitution.

The consolidated actions arise out of a fraudulent scheme purportedly engineered by the Tomasino defendants who are individuals and corporations engaged in the sale of real estate. According to the verified complaints and submissions made in the motion court, the Tomasino defendants entered into bona fide contracts with third parties, who were the owners or agents of the owners of cooperative apartments, for the purchase of such apartments and then contracted with the various plaintiffs to purchase or assign the right to purchase these apartments at greatly inflated prices. Plaintiffs were individuals recruited by defendants who had no intention of actually purchasing the apartments and plaintiffs themselves supplied none of the purchase money. Plaintiffs merely agreed to lend their assistance to the scheme in exchange for cash payments of, in most instances, $1,000.

With the use of fraudulently prepared contracts of sale, income tax returns, loan applications and other documents which overstated the income of the respective plaintiffs, it is alleged that defendants were able to obtain mortgages from The Dime which were well in excess of both the actual value of the cooperative and The Dime's loan-to-value ratio of 75%. Eventually, there were defaults on the mortgages, exposing plaintiffs to liability on the loans to The Dime.

While the extent of the plaintiffs' knowledge of the illegality of the scheme is in dispute, it appears from the record that at the very least they signed blank documents, including loan applications, and appeared at closings.

Following deposition of the various plaintiffs, The Dime moved for summary judgment. The Tomasino defendants moved for a protective order "suspend[ing] disclosure to the particular matter in dispute" and staying depositions of them during pending criminal investigations by the United States Attorney for the Southern District of New York and by the Federal Bureau of Investigation. Plaintiffs cross-moved for summary judgment against all defendants.

The court, in dismissing the complaint against The Dime, found that there were no particularized allegations of any representation by The Dime to plaintiffs upon which fraud could be predicated and that plaintiffs had not established a duty owed to them by the bank in order to support their claim of negligence. The court's reasoning was sound and therefore summary judgment was properly granted to The Dime.

The verified complaints state three causes of action against The Dime, to wit, conspiracy, fraud and negligence. Plaintiffs concede that there is no substantive tort of conspiracy. *(Alexander & Alexander v Fritzen,* 68 NY2d 968 [1986]; *Manning v Turtel,* 115 AD2d 712, 713 [2d Dept 1985]; *Green v Davies,* 182 NY 499 [1905].) Such allegations are permitted only to connect the actions of separate defendants with an otherwise actionable tort, in this case fraud. *(Alexander & Alexander v Fritzen,* 68 NY2d, *supra,* at 969.)

Plaintiffs' showing with respect to their claim of fraud was also insufficient. Plaintiffs generally alleged that The Dime represented to plaintiffs that the cooperative apartments were of sufficient value to warrant the amounts of the mortgages granted and that the various documents received by the bank were accurately and honestly made. However, plaintiffs utterly failed to submit any evidence that the bank made any representations to them. While appraisals of the cooperative apartments commissioned by the bank did not reveal the overvaluations, such appraisals are akin to statements of opinion which generally are not actionable. (60 NY Jur 2d, Fraud and Deceit, §§ 29, 30, 35; *see also, Irving Trust Co. v La Pilar Realty,* 56 AD2d 532 [1st Dept 1977].) Plaintiffs understandably also failed to establish reliance upon any alleged representation by The Dime which is a necessary element of fraud. *(Wes Sheet Metal Corp. v Flushing Sav. Bank,* 132 AD2d 608 [2d Dept 1987].) To the contrary, the documents disclose that plaintiffs were unconcerned as to the substance of the underlying transactions and were, at best, "nominees" in exchange for a fee. Nor could it be said that The Dime can be liable for the fraud which was, at the very least, made possible by the actions of plaintiffs.

For these same reasons, there is no cause of action in negligence against the bank. Under the circumstances herein The Dime owed no duty to plaintiffs nor could the harm to plaintiffs have been reasonably foreseen by the bank.

With respect to the Tomasino defendants, we note initially that the motion court properly denied their applications for a

protective order and for a stay of the proceedings, and properly directed that the defendants appear for examination before trial subject to their right at that time to invoke the privilege against self-incrimination. The invocation of the privilege against self-incrimination is not a basis for precluding civil discovery *(see,* 3A Weinstein-Korn-Miller, NY Civ Prac ¶ 3101.39) and, in any case, the Fifth Amendment privilege could not be invoked on behalf of the corporate defendants *(United States v White,* 322 US 694, 698-699 [1944]).

While a criminal investigation apparently was underway at the time the Tomasino defendants' motion for a stay was made, there were no criminal actions pending against them. Even if a criminal prosecution had been pending, however, the motion court was not obligated to stay the civil matter. *(Steinbrecher v Wapnick,* 24 NY2d 354, 365 [1969], *rearg denied* 24 NY2d 1038 [1969]; *Oleshko v New York State Liq. Auth.,* 21 NY2d 778, 780 [1968]; 5 Weinstein-Korn-Miller, *op. cit.,* ¶ 4501.17.)

Clearly, the Tomasino defendants were faced with the difficult predicament of opposing the motion for summary judgment by affidavit or relying upon their right to remain silent. The Fifth Amendment privilege is not waived until a defendant voluntarily makes a statement "that is actually incriminatory and evidences a willingness to forego his constitutional privilege." *(Steinbrecher v Wapnick,* 24 NY2d, *supra,* at 362; *see also,* 5 Weinstein-Korn-Miller, *op. cit.,* ¶ 4501.09.) Whether or not the Tomasino defendants could have adequately addressed plaintiffs' motion for summary judgment without waiving the privilege is ultimately inconsequential, since the choice was one which by necessity had to be made by the defendants and was one which the defendants in fact resolved by choosing to remain silent.

The failure by the Tomasino defendants to counter the motion for summary judgment gives rise to a negative inference against them. (5 Weinstein-Korn-Miller, *id.,* ¶ 4501.17.) On the other hand, "[t]he fact that a defendant in a civil suit assumes a substantial risk when he chooses to assert his privilege does not * * * mean that the plaintiff is relieved of his obligation to prove a case before he becomes entitled to a judgment." *(Steinbrecher v Wapnick,* 24 NY2d, *supra,* at 365.) Material issues of fact exist as to whether plaintiffs were innocent parties who were "duped" by the defendants, or whether some or all of the plaintiffs were knowing participants in the fraud. If the latter is established then those plaintiffs would be barred from recovering since one may not

profit from his own wrongdoing. *(Barker v Kallash,* 63 NY2d 19, 25 [1984].)

Several of the plaintiffs submitted affidavits in opposition to the defendants' motions and in support of their motions for summary judgment. Plaintiff Carol Ottaviano, in a carefully drawn affidavit, denies filling out any loan applications but admits "none of the writing on that document is mine, with the possible exception of a signature on the back page, which I remember identifying as possibly being my signature at the deposition." With regard to the loan application, she states that all of the representations made in the document are false, but admits "[o]n the back of the form, my signature appears next to an X." She denies having ever attended a closing but, nevertheless, appears to admit that she "attended a meeting" at the office of attorneys for The Dime. She further admits signing numerous documents in blank.

The record below reveals further that plaintiff Dennis Martelli acted as a "nominee" in purchasing an apartment and considered himself employed by the Tomasino defendants to "recruit more nominees", for which he would be paid commissions. Plaintiff Francis Ottaviano similarily recruited "nominees". Plaintiff Kevin Geiger attended an interview with the president of a cooperative corporation at which he knew that the cooperative had been supplied with a false statement of his income and at which he had been coached to lie by the Tomasino defendants. Plaintiff Peter Pancucci admitted that he knew false information had been used to qualify him for a loan from The Dime. Plaintiff Rodney Wallace knew that fraudulent income and earnings had been attributed to him. His wife Patricia Wallace, who was also a participant in the scheme, admitted that she had been coached and was prepared to state falsely at the closing that she intended to reside in one of the apartments. Plaintiff Peter Tirado stated in his deposition that he didn't want to know anything about the transactions, that he was only concerned with making a "quick" $1,000, that he attended a closing and that he suspected the transaction was fraudulent. The remaining plaintiffs similarily admitted signing documents in blank and accepting fees for doing so.

Clearly, there are issues of fact as to the credibility of the plaintiffs and as to their culpability for the fraudulent scheme. The motion of the plaintiffs for summary judgment, therefore, should not have been granted, even in the absence of evidentiary proof submitted by the Tomasino defendants. Concur—Kupferman, J. P., Carro, Milonas, Rosenberger and Smith, JJ.