OPINION OF THE COURT
Nicholas Figueroa, J.
Petitioner Albert E. Isernio brings an application pursuant to CPLR 7502 (a) and 7503 (b), to permanently stay the arbitration proceeding commenced by Respondents, on the grounds that: (a) Petitioner and Respondents in their settlement agreement expressly agreed to litigate, not arbitrate, all disputes; (b) the claims sought to be arbitrated are beyond the scope of the arbitration clause contained in their Employment Agreement; and (c) any arbitration should be stayed pending the outcome of an ongoing Grand Jury investigation related to the same claims alleged by Respondents.
STATEMENT OF FACTS
Benefit Plan Administrators (BPA) provides services as a third-party benefits administrator of health benefit plans. Albert E. Isernio (the Petitioner) is the former principal owner and chief executive officer (CEO) of BPA.
On July 19, 1995, Respondents (Respondents) purchased BPA from Petitioner. To ensure an orderly transition, the parties agreed that Isernio was to continue managing BPA, as CEO, and executed an agreement (the 1995 Employment Agreement), pursuant to which Isernio would be paid a salary and incentive bonus based on the increase in the company’s future earnings. Under section 9 (b) of the 1995 Employment Agreement there was a provision for arbitration under the Rules of the American Arbitration Association.
During 1996 and 1997, the parties executed four different amendments to the 1995 Employment Agreement. None of these amendments changed the arbitration provision. The fourth amendment, for instance, provided that BPA would *123 secure a guarantee of incentive bonus payments to Isernio from its senior lender.
On June 3, 1998, Isernio filed a demand for arbitration against BPA under section 9 (b) of the 1995 Employment Agreement, based on BPA’s failure to use diligent efforts to guarantee payment of the incentive bonus as required by the fourth amendment to the 1995 Employment Agreement. In resolution of this dispute, on June 26, 1998, the parties executed a settlement agreement, which provided, among other things, that Isernio would discontinue the arbitration and would execute an amended and restated employment agreement, which was to amend the 1995 Employment Agreement, and contained a general merger clause.
In compliance with the settlement agreement, on June 26, 1998 the parties executed the amended and restated employment agreement (the 1998 Employment Agreement), which included the same arbitration provision of the 1995 Employment Agreement.
The Controversial Nassau County Contract
On September 10, 1997, Nassau County and BPA (represented by Isernio) entered into a contract entrusting BPA with the administration of the employee health benefits plan for Nassau County’s 26,000 workers. The net result of this new contract was to immediately increase Isernio’s incentive bonus to a total of $9 million, payable by BPA.
From January to March of 1999, pursuant to the Nassau County Legislature’s investigations, BPA was served with subpoenas duces tecum relating to the procurement of the Nassau contract. As a result of revelations emanating from these hearings, BPA informed Isernio that BPA would discontinue payment of incentive bonuses under their 1998 Employment Agreement.
On February 4, 1999, Isernio himself was subpoenaed to testify before the Rules Committee of the Nassau County Legislature and exercised his constitutional right under the Fifth Amendment to remain silent. Currently, the United States Attorney’s Office for the Eastern District of New York and the District Attorney of Nassau County are conducting Grand Jury investigations into the lawfulness of Nassau County’s contract with BPA.
On June 11, 1999, Respondents filed papers and served Iser-nio with a demand for arbitration, based on Isernio’s “fraud and misconduct” during Isernio’s procurement of the Nassau *124 County contract. Respondents seek recovery of $16.4 million which they have paid in settlement of Nassau County’s claims, in addition to the resulting $9 million incentive bonus claimed by Isernio.
In response to Respondents’ demand for arbitration, Isernio has petitioned this court to permanently enjoin arbitration, or in the alternative, to stay proceedings until the criminal investigations of the Nassau contract are completed.
JURISDICTION TO DETERMINE AVAILABILITY OF ARBITRATION
The first question presented is whether this court has jurisdiction to determine whether there is an enforceable agreement to arbitrate or whether this issue must itself be decided by the arbitrator.
This determination also involves the question of whether the ongoing criminal Federal and State investigations into the disputed subject matter justify a stay of arbitration to preserve Isernio’s constitutional rights under the Fifth Amendment. Because this question does not concern the construction of an agreement to arbitrate, it is outside the scope of an arbitrator’s jurisdiction. Instead it involves defining the scope of Petitioner’s constitutional rights, which is a determination within the jurisdiction of the courts.
Respondents proffer the Commercial Arbitration Rules of the American Arbitration Association (AAA) as evidence of the parties’ intent to leave all questions including that of arbitra-bility to the arbitrators. However, AAA Rules do not, and indeed, could not, give the arbitrators the power to rule on the question of whether Petitioner is entitled to a stay of the arbitration to avoid a potential conflict with his Fifth Amendment rights. Accordingly, the issue of whether a stay of arbitration is necessitated by the ongoing State and Federal criminal investigations must be determined in the courts.
IMPACT OF ARBITRATION ON FIFTH AMENDMENT RIGHTS
Next, we consider the issue of whether a stay of arbitration is warranted because of the pending Federal and State Grand Jury investigations into Isernio’s procurement of BPA’s contract with Nassau County. Petitioner cites copious case law wherein courts have granted stays of civil proceedings when the arbitration’s subject matter is being investigated in pending criminal proceedings. Petitioner, however, cites only one case where there was a stay of arbitration as distinct from a stay of judicial civil proceedings, Matter of Marabello v Allied *125 Maintenance Corp. (23 AD2d 503 [2d Dept 1965]). Its facts, however, are vastly different from the instant proceeding. Ma-rabello involved a stay of a pending arbitration of a union member’s dismissal based on his assaultive behavior pending a resolution of the underlying assault indictment. No prejudice to the employer was alleged, unlike the instant proceeding where, despite the argument of Petitioner that Respondents are not seeking to halt ongoing harm but “merely are seeking money”, the potential prejudice that Respondents could suffer were the arbitration delayed is severe, possibly hampering Respondents’ efforts to recover some $45 million in damages.
Analogous Federal case law exists although not relating specifically to stays of arbitration. New York Federal courts, for instance, will rarely grant a stay in a civil action where no indictment has issued. (See, Citibank v Hakim, 1993 WL 481335, 1993 US Dist LEXIS 16299 [SD NY, Nov. 18, 1993, Mukasey, J.]; Quint v Freda, 1999 WL 65046, 1999 US Dist LEXIS 1384 [SD NY, Feb. 11, 1999, Cote, J.]; United States v Private Sanitation Indus. Assn., 811 F Supp 802 [ED NY 1992]; In re Par Pharm. Sec. Litig., 133 FRD 12 [SD NY 1990].) Neither State nor Federal constitutional provisions mandate a stay, and there is no obligation to grant a stay on the basis of a pending criminal investigation alone. Rather, a balancing test has been applied weighing the inconvenience of delay to the aggrieved party against the subject’s Fifth Amendment right against self-incrimination. Indeed, the case cited by Petitioner himself, Volmar Distribs. v New York Post Co. (152 FRD 36 [SD NY 1993]), presents a tripartite test: (i) the plaintiff’s interests in proceeding expeditiously with the civil litigation as opposed to his prejudice occasioned by delay, (ii) the private interests of and burdens on the defendant, and (iii) the interests of the courts, nonparties and the public. Petitioner in the instant case has offered no specifics on how his Fifth Amendment rights would be prejudiced if arbitration were allowed to proceed, or how any discovery available under arbitration, traditionally very limited,, could be used as a cloak to conduct criminal discovery. In the following cases cited by Petitioner, this risk involving discovery was clearly in evidence. (See, Brock v Tolkow, 109 FRD 116 [ED NY 1985]; United States v Certain Real Prop. & Premises Known as 1344 Ridge Rd., 751 F Supp 1060 [ED NY 1989]; Integrated Generics v Bowen, 678 F Supp 1004 [ED NY 1988].) Therefore, the situations in the above cases are inapposite.
This court finds that a multifaceted test must be considered before staying arbitration on Fifth Amendment grounds, and *126 although there apparently are no cases that undertake this analysis in an arbitration context, one can analogize State and Federal case law involving stays of civil actions. It is noteworthy that no indictment has ensued in the instant case. Indeed, there may never be an indictment, but even when a criminal prosecution is actually pending against a party, there is no compulsion on the courts to order a stay; it remains within the discretion of the court. (Stuart v Tomasino, 148 AD2d 370 [1st Dept 1989].) First, if there is no indictment, a stay will not be issued unless there is very serious risk of (a) prejudice to the party requesting the stay, or (b) abuse of process due to the arbitral discovery process being used to conduct criminal discovery (Brock v Tolkow, supra; Integrated Generics v Bowen, supra). To determine prejudice under (a), a balancing test must be applied to determine (i) the interests of the party requesting that the arbitration proceed and the potential prejudice to that party if the arbitration is stayed, (ii) the interests of the party resisting the arbitration and prejudice to his or her Fifth Amendment rights if the arbitration were to proceed, (iii) the interests of third parties, and (iv) the public interest. In determining (ii), the mere assertion in the instant matter by Petitioner that his Fifth Amendment rights will be impinged by the choice of testifying or asserting his Fifth Amendment privilege and thereby invoking a diminished ability to defend himself in civil proceedings is, without more, insufficient to justify a stay. (Citibank v Hakim, supra; see also, accord, Matter of Kopf, 169 AD2d 428; see also, Paine, Webber, Jackson & Curtis v Malon S. Andrus, Inc., 486 F Supp 1118 [SD NY 1980].)
Petitioner, having bound himself to arbitrate, has the burden of specifying how his Fifth Amendment rights will be prejudiced, which has not been done here. Specifics concerning Fifth Amendment prejudice are especially important in an arbitration context with its traditionally less intrusive discovery process. Therefore, it may be a much more difficult task to specify how arbitration is being used as a cloak for criminal discovery. Finally, it should be noted that the Citibank case (supra) makes it explicit that the potential for prejudice to a defendant (or as here, a party to arbitration) is diminished when a private litigant, not the government, is the plaintiff, since it is less likely that discovery will be used as a cloak to conduct criminal discovery. (See also, Brock v Tolkow, supra.)
The “public interest” test may weigh in Respondents’ favor; while clearly the public has no pecuniary interest in the *127 arbitration, it is undeniable that the harm to BPA resulted from health benefit contracts with Nassau County’s government employees. The public may thus have more of an interest than usual with the instant resolution of claims between private parties. More significantly, witnesses may become unavailable, and the passage of time increases the difficulty of recovering the substantial sums involved. Respondents have been forced to indemnify Nassau County for over $16 million resulting from Petitioner’s procurement of this contract alone. Aside from Nassau County, Respondents have other substantial arbitrable grievances. Moreover, Petitioner has already received a bonus of over $4 million based on his procurement of the Nassau County contract. Because of the serious potential prejudice to Respondents and Petitioner’s failure to allege particulars of how he would be prejudiced, the balancing test clearly favors Respondents. Finally, if a stay were granted, the delay would be open-ended, as it is unclear when, if ever, an indictment will be handed down. (Quint v Freda, 1999 WL 65046, 1999 US Dist LEXIS 1384 [SD NY, Feb. 11, 1999, Cote, J.], supra.) Given the above circumstances, it would be anomalous not to give effect to a binding arbitration agreement.
Therefore, the Petitioner’s application for a stay of the arbitration commenced against it by way of a demand for arbitration by the American Arbitration Association, submitted on June 11, 1999, is denied.