[752 NYS2d 658]

Access Capital, Inc., Respondent, v Frank DeCicco, Also Known as Michael Macalary, Appellant, et al., Defendants.

First Department, December 31, 2002

APPEARANCES OF COUNSEL

*Joseph A. Vogel* of counsel (*Kravet & Vogel, LLP,* attorneys), for respondent.

*Edward L. Larsen* for appellant.

## OPINION OF THE COURT

RUBIN, J.

Appellant Frank DeCicco contends that invocation of his Fifth Amendment privilege against self-incrimination in response to each of the 110 allegations of the complaint precludes the award of summary judgment against him. Unlike a criminal prosecution, assertion of the privilege in civil proceedings does not relieve a defendant of the obligation to put in a defense. As appellant has failed to tender admissible evidence requiring trial of any issue of fact, summary judgment was properly entered against him.

The complaint asserts that plaintiff Access Capital, Inc. was induced to advance $600,000 in working capital to defendant Corporate Management Services (CMS) in exchange for the right to collect payment for certain accounts receivable. The accounts comprise two invoices in the total amount of $715,500, purportedly representing ticket and travel packages to the 1999 Super Bowl game purchased by Bear Stearns from CMS. The transaction is documented by a purchase and sale agreement dated February 19, 1999. On that date, Paul C. Mehring, plaintiff's senior vice-president, prior to signing the agreement with the principals of CMS, placed a call to the brokerage at a telephone number they provided in order to verify Bear Stearns' obligation to pay the invoices. The call was taken by someone identifying himself as Michael Macalary, whose name appears on both invoices. He confirmed the outstanding obligation and provided a fax number to which Mr. Mehring could send confirmation slips for signature. These were returned, also by facsimile transmission, in about an hour, affirming the accuracy of the invoices and assuring that "there are no offsets or defenses to payment." Mr. Mehring also had a telephone conversation with an individual identifying herself as Annette D'fiore of the accounts payable department, who assured him that payment should be expected within 30 days.

On March 5, 1999, Paul Mehring again placed a telephone call to the accounts payable department at Bear Stearns and left a voice mail message inquiring when payment would be forthcoming. Some time later, he received a call made from a

cellular telephone by someone identifying herself as Annette D'fiore, who assured him that payment was being processed. Finding it odd that his call would be returned from a cell phone, Mehring placed a call to the brokerage at its listed main telephone number and was informed that Bear Stearns had no listing for either an Annette D'fiore or a Michael Macalary or any similar name. When plaintiff subsequently demanded payment on the invoices, the firm denied receipt of any tickets from CMS and stated that no one by the name of Annette D'fiore or Michael Macalary had ever worked for the company.

Plaintiff then demanded immediate repayment of the monies loaned to defendant CMS under the factoring agreement. In a series of checks in the amount of $75,000, CMS made weekly installment payments aggregating $450,000 before they were discontinued in May 1999. Plaintiff then instituted this action for the balance due against defendant CMS and its principals, individually, Bear Stearns, "Michael Macalary" and "Annette D'fiore" alleging, inter alia, breach of contract, negligent misrepresentation, common-law fraud and conspiracy. CMS and its principals failed to appear, and plaintiff has obtained a default judgment against them. Plaintiff has settled the matter with defendant Bear Stearns, and the person named in the complaint as "Annette D'fiore" has never been identified.

In December 2000, appellant Frank DeCicco, together with CMS and its principals, were indicted in the Superior Court of New Jersey on various charges of theft by deception, conspiracy and money laundering. Appellant DeCicco was named in count three of the indictment, which makes specific reference to the accounts receivable from Bear Stearns. He faces charges of theft by deception in the second degree. Plaintiff thereupon served an amended complaint, by leave of court, naming DeCicco as a defendant. The fourth cause of action for common-law fraud and conspiracy alleges that it was DeCicco who assured Mehring of Bear Stearns' intention to pay the CMS invoices and sent him the confirmatory fax.

In his answer, appellant asserts his Fifth Amendment privilege against self-incrimination in response to each of the 110 allegations of the complaint. The answer contains a laundry list of affirmative defenses and asserts, by way of cross claim, that his codefendants' actions "were the primary, proximate and sole cause of the Plaintiff's damages."

Plaintiff moved for summary judgment on the ground that negative inferences may be drawn against appellant from the assertion of his Fifth Amendment privilege, eliminating any

question of fact. Plaintiff's moving papers further assert that the extent of its damages is documented by canceled checks and other documents. Appellant cross-moved to stay the proceedings pending resolution of the criminal charges against him. Ruling from the bench, Supreme Court granted the motion and denied the cross motion. Based upon the $450,000 repaid by CMS and $10,000 received by plaintiff in settlement of the action as against defendant Bear Stearns, the court directed judgment against appellant DeCicco in the amount of $140,000 plus interest from the date of the loss.

On appeal, as on the motion, appellant takes the position that summary judgment is inappropriate where a defendant asserts the privilege against self-incrimination. In support of his argument, appellant relies on this Court's decision in *Britt v International Bus Servs.* (255 AD2d 143). He notes that in considering whether to impose a discretionary stay pending the resolution of a related criminal matter (CPLR 2201), a court should weigh "the risk of inconsistent adjudications, application of proof and potential waste of judicial resources" (*Britt* at 144, citing *Zonghetti v Jeromack*, 150 AD2d 561, 563), none of which were considered in denying his application. He notes that the United States Supreme Court has stated that Fifth Amendment protection applies not only to criminal cases but " 'privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings' " (*Baxter v Palmigiano*, 425 US 308, 316, quoting *Lefkowitz v Turley*, 414 US 70, 77).

Appellant's interpretation of the protection afforded by the Fifth Amendment in the context of a civil matter is overly expansive. While a party may not be compelled to answer questions that might adversely affect his criminal interest, the privilege does not relieve the party of the usual evidentiary burden attendant upon a civil proceeding; nor does it afford any protection against the consequences of failing to submit competent evidence (*United States v Rylander*, 460 US 752, 761 ["the claim of privilege is not a substitute for relevant evidence"]; *see also United States v Taylor*, 975 F2d 402, 404 [7th Cir]). As stated in *Williams v Florida* (399 US 78, 84), that a litigant might be forced to elect "between complete silence and presenting a defense has never been thought an invasion of the privilege against compelled self-incrimination."

The Court of Appeals has "decline[d] to extend to civil cases a rule originally designed as a safeguard in criminal prosecu-

tions" (*Marine Midland Bank v Russo Produce Co.*, 50 NY2d 31, 42). Considering the privilege in the context of a judgment rendered after trial, the Court drew an analogy to the failure to produce a material witness, stating that the failure to answer "may be considered by a jury in assessing the strength of evidence offered by the opposite party on the issue which the witness was in a position to controvert" (*id.*). In his moving papers, appellant contended that the practical effect of this ruling is to limit the consequences of invoking the privilege to a negative inference that may only be drawn by the trier of fact. However, the limitation noted by the Court is rather more narrow: the privilege being personal, the consequences are limited to the witness that invokes it (*id.* at 45). Thus, where the privilege is asserted by a nonparty witness, no adverse inference may be drawn (*State of New York v Markowitz*, 273 AD2d 637, 646, *lv denied* 95 NY2d 770).

The appropriate analogy under the circumstances of this matter, in which defendant failed to answer any of the complaint's 110 allegations, is a default in answering. It is settled that such a default admits all traversable allegations contained in the complaint (*McClelland v Climax Hosiery Mills*, 252 NY 347, 351), excluding allegations as to damages (*see Boorman v Deutsch*, 152 AD2d 48, 54-55, *lv dismissed* 76 NY2d 889). Furthermore, the circumstances of this case are readily distinguishable from those of *Britt* (255 AD2d at 144), in which the testimony of the witness invoking the privilege was found to be "critical and necessary" and without which the defendants "would be unable to assert a competent defense." In the context of civil litigation, a discretionary stay is appropriate to avoid prejudice to another party that would result from the assertion of the privilege against self-incrimination by a witness; however, no such accommodation need be extended to the party who invokes the constitutional privilege. Here, it is appellant DeCicco who has invoked the privilege, and he is the only defendant affected by that decision (*Marine Midland* at 45).

There is no merit to appellant DeCicco's alternative argument that a stay should be granted on equitable grounds because his discovery efforts will be impeded until the criminal proceeding against him is resolved. It is settled that invoking the privilege against self-incrimination is generally an insufficient basis for precluding discovery in a civil matter (*see State of New York v Carey Resources*, 97 AD2d 508, 509; *see also Stuart v Tomasino*, 148 AD2d 370, 373). As the Court of Appeals stated in *Steinbrecher v Wapnick* (24 NY2d 354, 365, *rearg denied* 24 NY2d 1038):

"When a defendant fails to present evidence on his own behalf in a civil case * * * but chooses instead to assert his constitutional privilege, he places himself at an obvious disadvantage. Moreover * * * the courts need not permit a defendant to avoid this difficulty by staying the civil action until a pending criminal prosecution has been terminated. (See *Langemyr v. Campbell*, 21 NY2d 796; cf. *Oleshko v. New York State Liq. Auth.*, 21 NY2d 778.) The fact that a defendant in a civil suit assumes a substantial risk when he chooses to assert his privilege does not, however, mean that the plaintiff is relieved of his obligation to prove a case before he becomes entitled to a judgment."

The record is sufficient to sustain the award of summary judgment against appellant. Though the evidence implicating him in the conspiracy to induce plaintiff to extend financing based upon the fabricated invoices is circumstantial, it is nevertheless compelling. Plaintiff's senior vice-president stated that he placed a call to Bear Stearns to verify the legitimacy of the invoices. The party who answered identified himself, both on the telephone and in two confirmations sent to plaintiff by facsimile transmission, as "Michael Macalary, Equities Trading Manager." The fax bears the legend "DIVIDENDS" and is imprinted with the telephone number of a fax machine located in Bear Stearns' dividends department. While Bear Stearns never employed anyone named Michael Macalary, it did employ appellant Frank DeCicco as the head of its dividends department. Finally, the record contains the log of some 280 telephone calls placed from appellant DeCicco's personal line at Bear Stearns to defendant Jeffrey S. Burd, the vice-president of defendant CMS.

In the absence of any explanation for these remarkable coincidences, the evidence is sufficient to permit the conclusion that it was Frank DeCicco who provided the certification of the invoices to Paul Mehring, plaintiff's senior vice-president. The damages sustained by plaintiff are established by documentary evidence including the subject invoices, canceled checks for the amount of the working capital extended to CMS and checks issued by CMS to plaintiff in partial repayment for the amounts obtained by means of the fictitious invoices. Thus, appellant has failed to raise any material question of fact by tendering admissible evidence requiring the trial of any issue, and summary judgment was properly entered against him (*Zuckerman v City of New York*, 49 NY2d 557, 562).

The dissenter seeks to draw an artificial distinction between the evidentiary burden imposed upon a defendant at trial and upon a motion for summary judgment. It is well settled that "[s]ummary judgment is the procedural equivalent of a trial (*Capelin Assocs. v Globe Mfg. Corp.*, 34 NY2d 338) requiring the parties to submit in opposition 'evidentiary facts or materials, by affidavit or otherwise * * * demonstrating the existence of a triable issue of ultimate fact' " (*Cambridge Factors v Stagecoach Bus Sys.*, 155 AD2d 267, 268, quoting *Indig v Finkelstein*, 23 NY2d 728, 729). Plaintiff has established a prima facie case entitling it to judgment unless appellant presents admissible evidence to demonstrate the existence of a material question of fact (*Alvarez v Prospect Hosp.*, 68 NY2d 320, 325). To obviate appellant's evidentiary obligation under these circumstances, essentially elevating unsworn defenses to the level of probative evidence, would allow him an unfair tactical advantage over plaintiff corporation merely because his tortious conduct is sufficiently egregious to subject him to criminal prosecution.

Accordingly, the order of the Supreme Court, New York County (Ira Gammerman, J.), entered September 10, 2001, which granted plaintiff's motion for summary judgment and denied defendant-appellant's cross motion to stay the proceedings pending resolution of criminal proceedings against appellant in New Jersey, should be affirmed, without costs.

ROSENBERGER, J. (dissenting). In granting and affirming summary judgment to plaintiff, the trial court and the majority rely on the defendant's assertion of his Fifth Amendment privilege against self-incrimination in response to the allegations of the complaint and ignore the implications of what the majority characterizes as defendant's "laundry list of affirmative defenses." The plaintiff's motion for summary judgment completely ignored the affirmative defenses. The motion court did not, in its oral decision, refer to them at all. On this ground alone, summary judgment was inappropriate.

Further, among those affirmative defenses were defendant's assertions that he did not inflict or proximately cause plaintiff's alleged injuries and that he committed no misrepresentation or fraudulent concealment of any material facts upon which plaintiff could have relied. Those averments, although denominated "affirmative defenses," are essentially denials of material elements of the causes of action asserted against him. Questions of fact thus exist which are not appropriate for summary

judgment, particularly summary judgment premised on defendant's assertion of his Fifth Amendment privilege (*see e.g. Beece v Guardian Life Ins. Co. of Am.*, 110 AD2d 865, 867).

The law is clear that adverse inferences *may* be drawn against a defendant who invokes the privilege in a civil case (*see Baxter v Palmigiano*, 425 US 308, 316-317; *Marine Midland Bank v Russo Produce Co.*, 50 NY2d 31, 42; *Matter of DeBonis v Corbisiero*, 155 AD2d 299, *lv denied* 75 NY2d 709, *cert denied* 496 US 938), however, it does not compel such inferences, nor does it relieve the plaintiff of his obligation to prove a case before he becomes entitled to a judgment (*Steinbrecher v Wapnick*, 24 NY2d 354, 365; *Stuart v Tomasino*, 148 AD2d 370, 373). Plaintiff has not met that obligation here.

While Mehring's affidavit and other documentary evidence submitted by plaintiff may establish that a fraud was perpetrated upon plaintiff, it does not make out a prima facie case that defendant was indeed "Michael Macalary" or that he took part in the fraud. Mehring stated: "I later found out that there was in fact no one named Michael Macalary at Bear Stearns, but rather that it was defendant * * * who pretended to be Michael Macalary." There is nothing in Mehring's affidavit establishing his personal knowledge that defendant was indeed Michael Macalary, nor is there anything identifying the source from which Mehring assertedly "found out" that information. The only other document annexed to the moving papers that makes any reference to defendant is the New Jersey indictment, which, given the constitutional presumption of innocence, cannot serve as evidence in support of plaintiff's summary judgment motion against defendant.

Federal courts have held that a party who asserts the privilege against self-incrimination in a civil case must bear the consequence of lack of evidence, and a claim of privilege will not prevent an adverse finding or even summary judgment if the litigant does not present sufficient evidence to satisfy his evidentiary burden (*see e.g. United States v Certain Real Prop. & Premises Known as 4003-4005 5th Ave., Brooklyn, N.Y.*, 55 F3d 78, 83). However, I am aware of no case in which a New York court granted summary judgment in a civil action premised solely upon a defendant's assertion of his Fifth Amendment rights.

Moreover, the Second Circuit, in describing the tensions that exist between the assertion of Fifth Amendment rights on the one hand and the rights of parties who seek civil recompense

against those who invoke the Fifth Amendment to fully litigate their claims, has cautioned that trial courts should not

> "through inappropriate procedural remedies or unwarranted sanctions, unduly burden[ ] litigants' valid attempts to seek the protection that the privilege against self-incrimination provides * * * [W]hen there is nothing to suggest that the Fifth Amendment * * * was used abusively or to gain an unfair tactical advantage * * * a trial court [should] consider[ ] the relevant factors and act[ ] with moderation to accommodate both a litigant's valid Fifth Amendment interests and the opposing parties' needs in having litigation conducted fairly * * *." (*Id.* at 85.)

Application of the Second Circuit's cogent and balanced advice leads to the conclusion that the motion court abused its discretion in denying defendant's cross motion for a stay, limited in whatever way would be most appropriate, pending resolution of the New Jersey criminal case, as we have previously determined, in similar circumstances, is the appropriate course of action (*see Britt v International Bus Servs.,* 255 AD2d 143).

MAZZARELLI, J.P., and GONZALEZ, J., concur with RUBIN, J.; ROSENBERGER, J., dissents in a separate opinion.

Order, Supreme Court, New York County entered September 10, 2001, affirmed, without costs.