[978 NYS2d 239]

JACQUELINE EL-DEHDAN, Respondent, v SALIM EL-DEHDAN, Also Known as SAM REED, Appellant.

Second Department, December 18, 2013

**APPEARANCES OF COUNSEL**

*Barket Marion Epstein & Kearon, LLC*, Garden City (*Bruce A. Barket* and *Brad A. Schlossberg* of counsel), for appellant.

*Alomar & Associates, P.C.*, Ridgewood (*Karina E. Alomar* of counsel), for respondent.

**OPINION OF THE COURT**

ANGIOLILLO, J.

In this matrimonial action, the Supreme Court held the defendant in contempt of court for disobeying a court order dated January 29, 2010, which required him to deposit with the

plaintiff's attorney the proceeds of a certain real estate transaction and imposed a civil sanction which allowed him to purge the contempt to avoid incarceration. The defendant appeals, contending that the plaintiff failed to satisfy her burden of proof and that the Supreme Court improperly drew an adverse inference against him for invoking his privilege against self-incrimination during the contempt hearing. In addressing these contentions, we take this opportunity to clarify the parties' relative burdens of proof where the alleged contemnor has invoked the constitutional privilege against self-incrimination, and to harmonize inconsistencies in the case law with respect to the elements of civil contempt. We conclude that the defendant's contentions are without merit and affirm the order holding him in contempt.

The parties were married in Lebanon in 1982 and have two adult children. Throughout their lengthy marriage, the parties acquired substantial marital property and had a dry cleaning business. Two parcels of real property are relevant to the issues in this appeal: a parcel on Ainslie Street in Brooklyn (hereinafter the Brooklyn property), and a parcel on 60th Road in Maspeth, Queens (hereinafter the Queens property).

In 2008, the plaintiff commenced this action and moved for pendente lite relief. The defendant cross-moved to dismiss the action on the ground of res judicata based on a judgment entered in Lebanon in 2000 and a Kings County divorce action allegedly dismissed with prejudice in 2001. At a hearing on February 4, 2009, the Supreme Court informed the defendant that, regardless of its ultimate determination on the validity of the Lebanese divorce, that judgment did not resolve issues of equitable distribution, which would be submitted to a referee for an evidentiary hearing. Shortly thereafter, unbeknownst to the court or the plaintiff, the defendant transferred ownership of the two subject parcels of real property. On February 24, 2009, the defendant entered into a contract to sell the Brooklyn property for $950,000 to Zackmaxie, LLC (hereinafter Zackmaxie), and the transfer was completed by deed dated March 31, 2009 (hereinafter the March 2009 transfer). On April 6, 2009, he transferred the Queens property by deed to Mustafa Othman, apparently without consideration (hereinafter the April 2009 transfer).

Thereafter, when the defendant failed to appear for further proceedings, the court denied his motion to dismiss and referred the matter to the referee for an inquest on the grounds for divorce and equitable distribution. Prior to the inquest, an In-

ternet search conducted by the plaintiff's attorney failed to reveal either the March 2009 transfer or the April 2009 transfer. The defendant failed to appear at the inquest, which went forward without him.

On December 4, 2009, the referee issued findings of fact and a determination which awarded the plaintiff a divorce on the ground of cruel and inhuman treatment and provided for equitable distribution, awarding her, among other things, the Brooklyn and Queens properties. Shortly thereafter, the plaintiff learned of the March 2009 transfer and the April 2009 transfer. On January 29, 2010, on the plaintiff's motion, the Supreme Court issued an order (hereinafter the January 2010 order), which directed the defendant to "deposit immediately" with the plaintiff's attorney the net proceeds of the March 2009 transfer, that is, "the sum of nine hundred fifty thousand ($950,000.00) dollars . . . , minus the money paid for real estate broker, transfer taxes and payment of the underlying mortgage." It is undisputed that the defendant failed to deposit the proceeds of the March 2009 transfer with the plaintiff's attorney. In August 2010, the plaintiff moved to hold the defendant in civil and criminal contempt for violating the January 2010 order.

In determining the contempt motion, the Supreme Court considered, among other things, the plaintiff's testimony at the inquest, documents, and exhibits which established the following. The parties initially acquired the Brooklyn property as tenants by the entirety in 1989; they satisfied the first mortgage in 1997; the defendant forged the plaintiff's signature and transferred the property to himself alone in 1998; the defendant transferred the property to his sister and nephew in 1999; the sister and nephew transferred it back to the defendant in 2002; the defendant executed a deed from himself, as "Salim Dahdan," to himself, as "Sam Reed," in 2003; he obtained a $250,000 mortgage loan from Emigrant Mortgage Company, Inc., in 2007; and the final tax assessment roll for 2009 listed the defendant as the owner. The defendant acquired the Queens property in his name alone in 1999; he executed a deed from himself, as "Salim Dahdan," to himself, as "Sam Reed," in 2003; and the final tax assessment roll for 2009 listed Mustafa Othman as the owner.

With respect to the March 2009 transfer of the Brooklyn property, the closing statement of the purchaser's attorney, dated March 31, 2009, showed that the defendant received net proceeds in the sum of $776,046.21, comprising the initial down

payment of $150,000, a subsequent down payment of $110,000, and a wire transfer of $516,046.21, representing the balance due after other deductions and credits, including a mortgage payoff of $247,590.79 to Emigrant Mortgage Company, Inc. A handwritten notation in the margin next to the wire transfer stated, "Sam Reed, To Account Washington Mutual, 4894318637, 3/31/09." The deed was recorded on June 3, 2009, but a computer printout from the New York City Automated City Register Information System (ACRIS) had no record of a satisfaction of mortgage. On June 16, 2009, the new owner, Zackmaxie, obtained a mortgage loan from Signature Bank for $675,000, which was not recorded until October 29, 2009, 20 days after the inquest on the issue of equitable distribution was conducted. A representative of Zackmaxie informed the plaintiff's attorney that the balance due for the March 2009 transfer was not paid to the defendant until Zackmaxie obtained the new mortgage loan in June 2009.

In opposition to the plaintiff's motion to hold him in contempt, the defendant submitted an affidavit, in which he averred that he no longer possessed the proceeds of the March 2009 transfer.

On February 4, 2011, at the contempt hearing before the referee who was appointed to hear the issue, the defendant conceded that he had received a copy of the January 2010 order and that he had not deposited any money with the plaintiff's attorney pursuant to that order. He stipulated to the admission into evidence of all relevant documents and evidence concerning the Brooklyn property and the March 2009 transfer, including the closing statement. The defendant invoked his constitutional privilege against self-incrimination in response to all questions relating to the proceeds of the March 2009 transfer, and whether he owned an account at Washington Mutual.

The referee made findings that the defendant had dissipated marital assets and may have transferred assets without fair consideration after the plaintiff commenced this action, but recommended denial of the motion on the ground that the plaintiff had failed to meet her burden of establishing either civil or criminal contempt. In an order dated September 12, 2011, the Supreme Court granted the plaintiff's motion to set aside the referee's report and recommendation, determining that the referee's findings were not supported by the record and that the defendant was in contempt of court by failing to abide by the terms of the January 2010 order. The court found that

the requirements to hold the defendant in civil contempt had been satisfied because the defendant was aware of the lawful and unequivocal requirements of the January 2010 order, and disobeyed that order with full knowledge of its terms. The court also noted that while the defendant was entitled to rely upon his constitutional privilege against self-incrimination in response to questions relating to the proceeds of the March 2009 transfer, the privilege did not protect him from the consequences of his failure to submit competent proof that he had no access to the proceeds. The court directed that the defendant could purge his contempt and avoid imprisonment by complying with certain conditions, including the payment of the proceeds from the March 2009 transfer. The court did not impose the criminal sanction of a definite jail term without the opportunity to purge the contempt, thus granting, in effect, only that branch of the plaintiff's motion which was to find the defendant in civil contempt (*see Matter of Rubackin v Rubackin*, 62 AD3d 11, 15-16 [2009]). Thus, we now turn to an analysis of the elements and burden of proof on a civil contempt motion to determine if the plaintiff met her burden with respect to that branch of her motion.

The Elements of Civil Contempt and the Burden of Proof

The defendant contends that the plaintiff failed to satisfy her burden of establishing civil contempt because the March 2009 transfer did not violate any court order and the plaintiff failed to adduce evidence that the defendant still possessed the proceeds of the March 2009 transfer when he received the January 2010 order, such that he had the ability to comply. The plaintiff responds that she made a prima facie showing satisfying all elements of civil contempt, at which point the burden shifted to the defendant to show his inability to comply with the January 2010 order, and that he failed to meet that burden.

"A motion to punish a party for civil contempt is addressed to the sound discretion of the court, and the movant bears the burden of proving the contempt by clear and convincing evidence" (*Matter of Hughes v Kameneva*, 96 AD3d 845, 846 [2012]; *see Educational Reading Aids Corp. v Young*, 175 AD2d 152 [1991]). In *Matter of McCormick v Axelrod* (59 NY2d 574, 583 [1983]), the Court of Appeals held that the civil contempt must be proved "with reasonable certainty." The "reasonable certainty" standard requires "a quantum of proof . . . greater than a preponderance of evidence but less than proof beyond a reasonable doubt . . . akin to the clear and convincing evidence standard" (*Kihl v Pfeffer*, 47 AD3d 154, 163-164 [2007]).

In addressing the elements of civil contempt which must be proved by clear and convincing evidence, we are guided by the statutory source of judicial authority to punish for contempt, set forth in Judiciary Law § 750 *et seq*. The section applicable to civil contempt permits a court "to punish, by fine and imprisonment, or either, a neglect or violation of duty, or other misconduct, by which a right or remedy of a party to a civil action or special proceeding, pending in the court may be defeated, impaired, impeded, or prejudiced," in various circumstances including, as relevant here, "any other disobedience to a lawful mandate of the court" (Judiciary Law § 753 [A] [3]). By contrast, a court may impose punishment for criminal contempt where a person is guilty of "[w]ilful disobedience to [the court's] lawful mandate" or "[r]esistance wilfully offered to [the court's] lawful mandate" (Judiciary Law § 750 [A] [3], [4]).[1]

Notably, for civil but not criminal contempt, there must be a finding that a "right or remedy of a party to a civil action or special proceeding, pending in the court may be defeated, impaired, impeded, or prejudiced" (Judiciary Law § 753 [A]). An order of civil contempt must include an express finding that this element has been satisfied (*see Stempler v Stempler*, 200 AD2d 733, 734 [1994]), but an omission of the finding may be supplied on appeal where the record supports it (*see Taylor v Taylor*, 83 AD3d 815, 817 [2011]; *Biggio v Biggio*, 41 AD3d 753 [2007]; *Lopez v Ajose*, 33 AD3d 976, 977 [2006]). The element of prejudice to a party's rights is essential to civil contempt, which aims to vindicate the rights of a private party to litigation, but not criminal contempt, which aims to vindicate the authority of the court (*see McCain v Dinkins*, 84 NY2d 216, 226 [1994]; *Town Bd. of Town of Southampton v R.K.B. Realty, LLC*, 91 AD3d 628, 629 [2012]; *Dalessio v Kressler*, 6 AD3d 57, 65-66 [2004]).

Another notable distinction between the two kinds of contempt is that subdivision (3) of the civil contempt statute, at issue here, does not include the words "wilful" and "wilfully," which are included in the criminal contempt statute (*compare*

---

1. We are cognizant of the alternate spellings of "willful" and "wilful" and their derivations. In this opinion, where materials are quoted, the spelling is that used in the original. One commentator, noting the inconsistent meanings of this term in the case law, has remarked that, "[c]ourts do not even agree on how many "*l's*" are in the word" (Lawrence N. Gray, Criminal and Civil Contempt § 1.21 at 96 [2d ed 2012]).

Judiciary Law § 753 [A] [3] *with* § 750 [A] [3], [4]).[2] In 1983, in *McCormick*, the Court of Appeals opined that,

> "[a]lthough the line between the two types of contempt may be difficult to draw in a given case, and the same act may be punishable as both a civil and a criminal contempt, the element which serves to elevate a contempt from civil to criminal is the *level of willfulness with which the conduct is carried out*" (*McCormick*, 59 NY2d at 583 [emphasis added]).

The wording of this formulation is subject to various interpretations. It might suggest that, while willfulness is an element of criminal contempt only, the willfulness must rise to a certain "level" in order to be punishable by a penal sanction. The language might also suggest that a lower "level" of willfulness is an element of civil contempt, while a higher "level" is an element of criminal contempt.

In context, however, it appears that the Court was opining, consistent with statutory language, that willfulness was only an element of criminal contempt. First, in support of the statement, the Court cited Judiciary Law §§ 750 (A) (3) and 753 (A) (3), as well as a decision of the Appellate Division, First Department, which held that, "without a finding of willful disobedience, the alleged contempt must be considered to have been civil in nature" (*Matter of Sentry Armored Courier Corp. v New York City Off-Track Betting Corp.*, 75 AD2d 344, 345 [1980]). Second, the Court noted that the record before it in *McCormick* did not support a finding of willfulness and that its further discussion would be limited to the elements of civil contempt (*see McCormick*, 59 NY2d at 583). And finally, the Court set forth the elements of civil contempt without including any element of willfulness:

> "In order to find that contempt has occurred in a given case, it must be determined that a lawful order of the court, clearly expressing an unequivocal mandate, was in effect. It must appear, with reasonable certainty, that the order has been disobeyed. Moreover, the party to be held in contempt must have had knowledge of the court's order, although it

---

2. Subdivision (A) (1) of the civil contempt statute, which is not at issue in this appeal, contains the only instance of the word "wilful" in that section (Judiciary Law § 753 [A] [1]).

is not necessary that the order actually have been served upon the party. Finally, prejudice to the right of a party to the litigation must be demonstrated" (*id.* at 583 [citations omitted]).

More than a decade later, in *McCain v Dinkins* (84 NY2d 216, 226 [1994]), the Court of Appeals again opined that "the element which escalates a contempt to *criminal status* is the level of willfulness associated with the conduct" (emphasis added) (*see also Matter of Department of Envtl. Protection of City of N.Y. v Department of Envtl. Conservation of State of N.Y.*, 70 NY2d 233, 240 [1987]). However, the Court expressly noted in *McCain* that "criminal contempt was not sought and [was] not in issue," and again set forth the elements of civil contempt without including any reference to willfulness (84 NY2d at 226). Thus, taken in context, the language used in *McCormick* and *McCain* apparently was not intended to imply, contrary to the language of Judiciary Law § 753 (A) (3), that some lower "level of willfulness" was an element of civil contempt.

Prior to *McCormick*, cases from this Court involving civil contempt consistently excluded any mention of willfulness. "Intent or willfulness is not required to hold a party in contempt for disobeying a court order or subpoena" (*Yalkowsky v Yalkowsky*, 93 AD2d 834, 835 [1983]; *see McNulty v McNulty*, 81 AD2d 581 [1981]; *Great Neck Pennysaver v Central Nassau Publs.*, 65 AD2d 616 [1978]). These cases explained that " '[i]t is not necessary that such disobedience be deliberate; rather the mere act of disobedience, regardless of its motive, is sufficient to sustain a finding of civil contempt if such disobedience defeats, impairs, impedes or prejudices the rights of a party' " (*Yalkowsky v Yalkowsky*, 93 AD2d at 835, quoting *Great Neck Pennysaver v Central Nassau Publs.*, 65 AD2d at 616-617; *see McNulty v McNulty*, 81 AD2d at 582).

Subsequent to *McCormick*, one line of cases from this Court continued to hold that willfulness was not an element of civil contempt, using language similar to that employed in *Yalkowsky* (*see e.g. Gomes v Gomes*, 106 AD3d 868, 869 [2013]; *Matter of Philie v Singer*, 79 AD3d 1041, 1042 [2010]; *Bais Yoel Ohel Feige v Congregation Yetev Lev D'Satmar of Kiryas Joel, Inc.*, 78 AD3d 626 [2010]; *Incorporated Vil. of Plandome Manor v Ioannou*, 54 AD3d 365, 366 [2008]; *Hinkson v Daughtry-Hinkson*, 31 AD3d 608 [2006]; *Italian Am. Civic Assn. of Mineola, N.Y. v Cataldo*, 225 AD2d 733, 733-734 [1996] ["willfulness is not an element of civil contempt"]; *Jim Walter Doors v Greenberg*, 151

AD2d 550, 551 [1989]; *Gordon v Janover*, 121 AD2d 599, 600 [1986]). Consistent with this line of cases, we have held that the three elements of civil contempt are "(1) that a lawful order of the court, clearly expressing an unequivocal mandate, was in effect, (2) that the order was disobeyed and the party disobeying the order had knowledge of its terms, and (3) that the movant was prejudiced by the offending conduct" (*Bernard-Cadet v Gobin*, 94 AD3d 1030, 1031 [2012]; *see e.g. Rose v Levine*, 84 AD3d 1206, 1207 [2011]; *Alderman v Alderman*, 78 AD3d 620 [2010]; *Town of Riverhead v T.S. Haulers, Inc.* 68 AD3d 1103 [2009]; *Coyle v Coyle*, 63 AD3d 657, 658 [2009]; *Galanos v Galanos*, 46 AD3d 507 [2007]).

However, another line of cases developed after *McCormick*, which held: "To prevail on a motion to punish a party for civil contempt, the movant must demonstrate that the party charged with contempt *willfully* violated a clear and unequivocal mandate of a court's order, with knowledge of that order's terms, thereby prejudicing the movant's rights" (*Suiss v Baron*, 107 AD3d 690, 690-691 [2013] [emphasis added and internal quotation marks omitted]; *see e.g. GMCK Realty, LLC v Mihalatos*, 95 AD3d 947, 949 [2012]; *Collins v Telcoa Intl. Corp.*, 86 AD3d 549, 549 [2011] [the violation must be "willful and deliberate"]; *McGrath v McGrath*, 85 AD3d 742 [2011]; *Rubin v Rubin*, 78 AD3d 812, 813 [2010]; *Katz v Katz*, 73 AD3d 1134, 1134 [2010] ["the movant must establish that the alleged violation was willful"]; *see also Town Bd. of Town of Southampton v R.K.B. Realty, LLC*, 91 AD3d at 629 [noting that the difference between civil and criminal contempt is "the degree of willfulness of the subject conduct" (internal quotation marks omitted)]).

This development in the case law is apparently explained by the divergent interpretations of the language in *McCormick* and *McCain*, one of which ascribes an undefined "level of willfulness" to civil contempt. One critic of the language in *McCormick* has noted this interpretation and posed the rhetorical question, "How can one be more or less willful than willful?" (Lawrence N. Gray, Criminal and Civil Contempt § 1.21 at 94-95 [2d ed 2012]). The answer might lie in the many ways in which the term is used in the law, leading to a perception that different "levels" of willfulness do, indeed, exist. The United States Supreme Court has noted that "[t]he word 'willfully' is sometimes said to be a word of many meanings whose construction is often dependent on the context in which it appears. Most

obviously it differentiates between deliberate and unwitting conduct" (*Bryan v United States*, 524 US 184, 191 [1998] [internal quotation marks and citation omitted]). "The word often denotes an act which is intentional, or knowing, or voluntary, as distinguished from accidental. But when used in a criminal statute it generally means an act done with a bad purpose; without justifiable excuse; stubbornly, obstinately, [or] perversely" (*id.* at 191 n 12 [internal quotation marks and citations omitted]). Indeed, English language dictionaries usually show at least two meanings of the word "willful" similar to these: (1) deliberate and intentional, and (2) obstinately or perversely self-willed (*see e.g.* www.merriam-webster.com; www.oxforddictionaries.com; www.dictionary.com).

Moreover, neither the Judiciary Law nor the case law offers a definition of the term "willful."[3] Black's Law Dictionary 1737 (9th ed 2009) defines "willful" as "[v]oluntary and intentional, but not necessarily malicious." A comparison of criminal contempt under the Judiciary Law and the analogous crime under the Penal Law would suggest that "willful" should be defined as "intentional," the mental state applicable to the Penal Law offense. Criminal contempt in the second degree is defined, inter alia, as "[i]ntentional disobedience or resistance to the lawful process or other mandate of a court" (Penal Law § 215.50 [3]). "A person acts intentionally with respect to a result or to conduct described by a statute defining an offense when his [or her] conscious objective is to cause such result or to engage in such conduct" (Penal Law § 15.05 [1]). Criminal contempt under the Judiciary Law and the Penal Law are both offenses against the authority of the court (*cf. People v Post Std. Co.*, 13 NY2d 185 [1963] [by analogy to the Judiciary Law, the Court implied an intent to defy the dignity and authority of the court in a criminal contempt prosecution under former Penal Law § 600 (7), charging the publication of a false report of the proceedings]). By analogy, then, the term "wilful" in the crimi-

---

**3.** In addressing the term "willful" here, we do not address the distinct provision in the Family Court Act, which provides certain enforcement mechanisms for a party's "failure to obey any lawful order of support" (Family Ct Act § 454 [1]; *see* Family Ct Act § 454 [2]) and additional sanctions, including a jail term, where the court finds that the party "has willfully failed to obey any lawful order of support" (Family Ct Act § 454 [3]; *see Matter of Powers v Powers*, 86 NY2d 63 [1995]). Where Family Court Act § 454 or any other section of the Family Court Act does not apply, the Family Court has authority to punish for civil or criminal contempt pursuant to the Judiciary Law (*see* Family Ct Act § 156).

nal contempt statute, Judiciary Law § 750 (A) (3), is best defined as "intentional."

The absence of the term "wilful" from paragraph (3) of the civil contempt statute, authorizing sanctions "for any other disobedience to a lawful mandate of the court" (Judiciary Law § 753 [A] [3]), indicates that the legislature, by inference, intentionally omitted or excluded the requirement of willfulness (*see Trotta v Ollivier*, 91 AD3d 8, 14 [2011]; McKinney's Cons Laws of NY, Book 1, Statutes § 240). This construction is buttressed when paragraph (3) is read together with its preamble, which authorizes the court "to punish, by fine and imprisonment, or either, a neglect or violation of duty, or other misconduct, by which a right or remedy of a party to a civil action or special proceeding . . . may be defeated, impaired, impeded, or prejudiced" (Judiciary Law § 753 [A]). A mere "neglect . . . of duty" does not require willfulness. Nor does the term "disobedience" in paragraph (3) import an element of willfulness. "Disobedience" is not defined in the Judiciary Law, in Black's Law Dictionary, or in case law from this Court. While there are various definitions of this word in English language dictionaries, some of them, such as "lack of obedience" (www.merriam-webster.com; www.dictionary.com) and "failure to obey" (www.merriam-webster.com; www.oxforddictionaries.com), do not imply willfulness, and are consistent with the statutory language, "neglect . . . of duty" (Judiciary Law § 753 [A]). Moreover, our cases have found "disobedience" to be established without regard to the motive of the contemnor, based upon both a volitional act (*e.g. Goldsmith v Goldsmith*, 261 AD2d 576 [1999] [contemnor executed a confession of judgment in favor of a friend in violation of a restraining order prohibiting the transfer of any assets]), and a failure to act (*e.g. Hinkson v Daughtry-Hinkson*, 31 AD3d at 608 [failure to transfer an interest in property "constituted disobedience"]; *see also Riverside Capital Advisors, Inc. v First Secured Capital Corp.*, 28 AD3d 455, 456 [2006] ["inaction" violated an "explicit directive" in a court order]).

Accordingly, we conclude that, for the plaintiff to prevail on her motion to hold the defendant in civil contempt, she was required to prove by clear and convincing evidence "(1) that a lawful order of the court, clearly expressing an unequivocal mandate, was in effect, (2) that the order was disobeyed and the party disobeying the order had knowledge of its terms, and (3) that the movant was prejudiced by the offending conduct"

(*Bernard-Cadet v Gobin*, 94 AD3d at 1031; *see Alderman v Alderman*, 78 AD3d at 620; *Galanos v Galanos*, 46 AD3d at 508). The use of the words "willful" and "willfully" in some of our cases involving civil contempt (*e.g. Suiss v Baron*, 107 AD3d at 690; *GMCK Realty, LLC v Mihalatos*, 95 AD3d at 949; *Collins v Telcoa Intl. Corp.*, 86 AD3d at 549; *McGrath v McGrath*, 85 AD3d at 742; *Rubin v Rubin*, 78 AD3d at 813; *Katz v Katz*, 73 AD3d at 1134) should not be construed to import the element of willfulness into a civil contempt motion made pursuant to Judiciary Law § 753 (A) (3). "It is not necessary that the disobedience be deliberate or willful; rather, the mere act of disobedience, regardless of its motive, is sufficient if such disobedience defeats, impairs, impedes, or prejudices the rights or remedies of a party" (*Gomes v Gomes*, 106 AD3d at 869 [citations and internal quotation marks omitted]).

The absence of willfulness from this formulation does not result in strict liability, since the proponent of a civil contempt motion must establish the contemnor's failure to comply with a court order with knowledge of its terms. Nor can civil contempt be founded upon an inadvertent or mistaken failure to comply with a court order since it is the movant's burden to establish that the court's mandate was clear and unequivocal (*see Bennet v Liberty Lines Tr., Inc.*, 106 AD3d 1038, 1040 [2013] [the movant failed to establish disobedience where there was a dispute as to the interpretation of the order]; *Massimi v Massimi*, 56 AD3d 624, 625 [2008] [movant failed to meet burden because the order was not clear and unequivocal]). Moreover, the movant's preliminary evidentiary showing of the elements of civil contempt does not end the inquiry. "[D]ue process requires that, in contempt proceedings, the contemnor be afforded an opportunity to be heard at a meaningful time and in a meaningful manner" (*Delijani v Delijani*, 73 AD3d 972, 973 [2010] [internal quotation marks omitted]). Once the movant establishes a knowing failure to comply with a clear and unequivocal mandate, the burden shifts to the alleged contemnor to refute the movant's showing, or to offer evidence of a defense, such as an inability to comply with the order (*see Yeager v Yeager*, 38 AD3d 534 [2007]; *Goldsmith v Goldsmith*, 261 AD2d at 577). A hearing is required only if the papers in opposition raise a factual dispute as to the elements of civil contempt, or the existence of a defense (*see Automated Waste Disposal, Inc. v Mid-Hudson Waste, Inc.*, 50 AD3d 1073, 1074 [2008]; *Jaffe v Jaffe*, 44 AD3d 825 [2007]; *Matter of Garbitelli v Broyles*, 257 AD2d 621, 622 [1999]; *Bowie v Bowie*, 182 AD2d 1049, 1050 [1992]).

■ Here, the plaintiff met her burden of establishing, by clear and convincing evidence, that the defendant was fully aware of the January 2010 order, which was a lawful and unequivocal mandate of the court, and that he disobeyed that mandate, while having full knowledge of its terms, resulting in prejudice to the plaintiff, who was denied the equitable distribution of marital property (*see Bais Yoel Ohel Feige v Congregation Yetev Lev D'Satmar of Kiryas Joel, Inc.*, 78 AD3d 626 [2010]; *Raphael v Raphael*, 20 AD3d 463, 464 [2005]; *Goldsmith v Goldsmith*, 261 AD2d at 576). Notably, at the contempt hearing, the defendant conceded that he received the January 2010 order and failed to deposit any money with the plaintiff's attorney pursuant to the order; these concessions established his knowing disobedience of the order (*see Bais Yoel Ohel Feige v Congregation Yetev Lev D'Satmar of Kiryas Joel, Inc.*, 78 AD3d at 626-627; *Hinkson v Daughtry-Hinkson*, 31 AD3d at 608; *Goldsmith v Goldsmith*, 261 AD2d at 577).

Contrary to the defendant's contention, the fact that he did not disobey an express order of the court in March 2009 when he transferred the Brooklyn property is irrelevant to the issue of whether he disobeyed the clear mandate of the January 2010 order to deposit the proceeds of that sale with the plaintiff's attorney. Nor did the plaintiff have the additional burden of establishing that the defendant still possessed or had control over the proceeds from the March 2009 transfer such that he had the ability to comply with the January 2010 order. Rather, once his failure to comply was established, the burden shifted to the defendant to offer competent, credible evidence of his inability to pay the sum of money as ordered (*see Yeager v Yeager*, 38 AD3d at 534; *Popelaski v Popelaski*, 22 AD3d 735, 737 [2005]; *Matter of Garbitelli v Broyles*, 257 AD2d at 622).

The defendant failed to meet his burden of establishing his defense of an inability to pay. The plaintiff had adduced evidence that the defendant received net proceeds of $776,046.21 from the March 2009 transfer, less than a year prior to the January 2010 order. In opposition to the contempt motion, the defendant submitted an affidavit in which he averred that he no longer possessed those proceeds, but he provided no evidence in support of that self-serving assertion. Generally, "conclusory, baseless, and self-serving allegations [are] insufficient to raise an issue of fact necessitating a hearing" on a contempt motion (*Jaffe v Jaffe*, 44 AD3d at 826), much less establish a defense to the motion. Nonetheless, here, the defendant was afforded a

hearing and the opportunity to present evidence in support of this defense. He refused to answer certain questions regarding the location of the proceeds of the March 2009 transfer by invoking his constitutional privilege against self-incrimination, and otherwise failed to present any evidence in support of his contention that he was unable to deposit the necessary sum of money as required by the order. Thus, the record established all elements of civil contempt, and the defendant failed to meet his burden of rebutting that evidence (*see Popelaski v Popelaski*, 22 AD3d at 737; *Goldsmith v Goldsmith*, 261 AD2d at 577; *Matter of Garbitelli v Broyles*, 257 AD2d at 622).

The Privilege against Self-Incrimination

The defendant contends that he properly invoked his constitutional Fifth Amendment privilege in response to certain questions, and that the Supreme Court improperly drew an adverse inference against him. Specifically, he contends that, since he was potentially facing both civil and criminal contempt sanctions, he was placed in the untenable position of having to make a choice between defending the civil branch of the motion or asserting his Fifth Amendment privilege with respect to the criminal branch of the motion. Therefore, he asserts, his invocation of the privilege against self-incrimination could not be used against him, as it was his right to invoke the privilege in defense of the criminal branch of the proceeding without adverse consequence.

The defendant has failed to cite any case precisely on point with respect to the instant situation, in which the subject motion was pursuant to both Judiciary Law §§ 750 (A) (3) and 753 (A) (3), seeking civil and criminal contempt sanctions. However, the dilemma he asserts is not new to the courts and has arisen in various types of civil proceedings, including those involving a mere risk of incurring potential criminal liability, and those involving a separate, ongoing criminal prosecution for the same subject matter raised in the civil proceeding. We find the defendant's contentions to be without merit based on well-established principles in analogous cases.

"[T]he Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them" (*Baxter v Palmigiano*, 425 US 308, 318 [1976] [holding that an adverse inference may be drawn from a prison inmate's silence at a disciplinary proceeding]).

"In New York, unlike the rule in a criminal case, a

party's invocation of the privilege against self-incrimination in a civil case may be considered by the finder of the facts in assessing the strength of the evidence offered by the opposing party on the issue which the witness was in a position to controvert" (*Kuriansky v Bed-Stuy Health Care Corp.*, 135 AD2d 160, 178-179 [1988], *affd* 73 NY2d 875 [1988] [holding that a disclosure order in a civil forfeiture action premised upon alleged criminal conduct did not violate the Fifth Amendment]; *see Marine Midland Bank v Russo Produce Co.*, 50 NY2d 31, 42 [1980]; *Breen Belgium BVBA v International Foreign Currency, Inc.*, 37 AD3d 633, 634 [2007] [based, in part, on the adverse inference arising from invocation of the defendant's Fifth Amendment privilege, the defendant failed to establish entitlement to judgment as a matter of law dismissing a fraudulent misrepresentation cause of action]).

Although a defendant in an ongoing criminal prosecution faces a dilemma whether to defend a civil proceeding involving the same subject matter or to assert the Fifth Amendment privilege, "a court need not permit a defendant to avoid this difficulty by staying a civil action until a pending criminal prosecution has been terminated," and the fact "that the witness may invoke the privilege against self-incrimination is not . . . a basis for precluding civil discovery" (*Matter of Astor*, 62 AD3d 867, 869 [2009] [internal quotation marks omitted] [motions to stay discovery and for a protective order in a probate proceeding properly denied, although the proponent of the will was the defendant in a criminal prosecution]; *see State of New York v Carey Resources*, 97 AD2d 508, 509 [1983] [motion to stay civil discovery was improperly granted on the ground that disclosure might incriminate the movant]; *see generally Steinbrecher v Wapnick*, 24 NY2d 354, 365 [1969]).

Further, a party to a civil action or proceeding is not relieved of his or her burden of proof simply by invoking the privilege against self-incrimination. In a federal civil contempt proceeding based on a defendant's failure to produce records or property, where the defendant validly invokes the privilege against self-incrimination in answer to questions concerning the whereabouts of the records or property allegedly in his possession, invocation of the privilege "does not relieve him of his burden to demonstrate a present inability to comply" with the court order (*Armstrong v Guccione*, 470 F3d 89, 100 [2006]; *see United*

*States v Rylander*, 460 US 752, 757-759 [1983]). The same rule has been applied in New York. Thus,

"[w]hile a party may not be compelled to answer questions that might adversely affect his [or her] criminal interest, the privilege does not relieve the party of the usual evidentiary burden attendant upon a civil proceeding; nor does it afford any protection against the consequences of failing to submit competent evidence" (*Access Capital v De-Cicco*, 302 AD2d 48, 51 [2002]; *see Matter of Astor*, 62 AD3d at 869).

■ Here, the defendant had the burden of establishing his defense of an inability to pay the sum required by the January 2010 order (*see Yeager v Yeager*, 38 AD3d at 534; *Popelaski v Popelaski*, 22 AD3d at 737); his invocation of his privilege against self-incrimination did not relieve him of the obligation of coming forward with evidence in support of that defense (*see United States v Rylander*, 460 US at 757-759; *Armstrong v Guccione*, 470 F3d at 100; *Access Capital v DeCicco*, 302 AD2d at 51). Moreover, the Supreme Court was entitled to draw an adverse inference against him (*see Marine Midland Bank v Russo Produce Co.*, 50 NY2d at 42; *Kuriansky v Bed-Stuy Health Care Corp.*, 135 AD2d at 178-179; *Breen Belgium BVBA v International Foreign Currency, Inc.*, 37 AD3d at 634).

The defendant correctly contends that a party may not be held in criminal contempt solely for a justified assertion of the Fifth Amendment privilege. Thus, in a criminal contempt proceeding, in which willful disobedience is an element, the court may not base a finding of willfulness solely upon the defendant's justified invocation of the privilege, absent any other evidence of willfulness (*see Matter of Solerwitz v Signorelli*, 183 AD2d 718, 719 [1992] [criminal contempt sanction improper where attorney was directed to turn over estate assets to the Surrogate's Court, and the attorney asserted the privilege in response to the question of what had become of the assets]). Here, however, the Supreme Court did not hold the defendant in criminal contempt, and thus, did not impose a criminal sanction. Rather, the court held the defendant in civil contempt.

Contrary to the defendant's contention, the Supreme Court did not hold him in contempt solely for having asserted his Fifth Amendment privilege. Rather, the Supreme Court held him in civil contempt for failing to comply with the January 2010 order. There is a difference (*compare United States v Ry-*

*lander*, 460 US at 760 [incarceration was properly ordered for failure to comply with court order to produce records and the failure to adduce any evidence of an inability to comply, not for defendant's refusal to testify], *with United States v Edgerton*, 734 F2d 913, 918, 922 [1984] [court improperly imposed the sanction of incarceration with the opportunity to purge contempt by answering questions to which the party validly invoked the privilege against self-incrimination], *and Matter of County of Orange v Rodriguez*, 283 AD2d 494 [2001] [court's comments revealed that the court improperly imposed a civil contempt sanction based solely on the defendant's refusal to answer questions at the contempt hearing]; *cf. Federal Deposit Ins. Corp. v Salesman Unlimited Agency Corp.*, 101 AD2d 876 [1984] [court may sanction for refusal to answer questions where there is no showing of a good faith basis for invoking the privilege]). The civil penalty imposed was not a punishment for refusing to answer questions at the hearing. Rather, the civil sanction was properly imposed, based on evidence establishing the defendant's disobedience of the January 2010 order, and his failure to adduce evidence refuting the elements of civil contempt or establishing his defense of an inability to pay. Where evidence in the record supports the civil contempt finding, which is not based solely upon the invocation of the privilege against self-incrimination, and the defendant has failed to meet his or her burden of proof, the order will be upheld (*see Berliner v Berliner*, 33 AD3d 744 [2006] [the defendant invoked the Fifth Amendment and also failed to adduce any other evidence in support of his defense]).

## Exhaustion of Remedies

Finally, the defendant contends that the plaintiff failed to satisfy the mandatory precondition of Domestic Relations Law § 245 that she first exhaust other, less drastic enforcement mechanisms, such as settling a judgment from the equitable distribution order and seeking enforcement of the judgment. The plaintiff responds that section 245 applies only to maintenance and support orders, not an order requiring the deposit of sale proceeds to effect equitable distribution and, in any event, she satisfied the precondition with evidence establishing that other enforcement mechanisms would have been futile.

In an action for a divorce, Domestic Relations Law § 245 grants the court authority to punish a party for civil contempt pursuant to Judiciary Law § 756 where the party defaults "in paying any sum of money" required by a judgment or order,

"and it appears presumptively, to the satisfaction of the court, that payment cannot be enforced" pursuant to the enforcement mechanisms provided in Domestic Relations Law §§ 243 and 244 and CPLR 5241 and 5242. A civil contempt motion in a divorce action should be denied where the movant fails to make a showing pursuant to section 245 that "resort to other, less drastic enforcement mechanisms had been exhausted or would be ineffectual" (*Capurso v Capurso*, 61 AD3d 913, 914 [2009]).

 Although the exhaustion precondition is discussed most often in case law involving the nonpayment of maintenance or child support (*see e.g. Tarone v Tarone*, 104 AD3d 760 [2013]; *Jones v Jones*, 65 AD3d 1016 [2009]; *Capurso v Capurso*, 61 AD3d at 913; *Murray v Murray*, 269 AD2d 433 [2000]; *Snow v Snow*, 209 AD2d 399 [1994]), it has also been applied in cases involving the nonpayment of other sums (*see Lopez v Ajose*, 33 AD3d 976 [2006] [judgment requiring both child support and equitable distribution]; *Rienzi v Rienzi*, 23 AD3d 447 [2005] [judgment requiring reimbursement of spouse's tax refund]; *Cooper v Cooper*, 21 AD3d 869 [2005] [order requiring the plaintiff to return funds unilaterally withdrawn from the parties' joint account]; *Feldman v Juliano*, 248 AD2d 430, 431 [1998] [judgment requiring payments for medical insurance coverage]). This is so because the plain language of Domestic Relations Law § 245 unambiguously includes the nonpayment of "any sum of money." Nothing in this language restricts the meaning to maintenance and child support. Moreover, although CPLR 5241 and 5242 expressly provide enforcement mechanisms for support orders, Domestic Relations Law § 244 extends those enforcement mechanisms to a default in paying "any sum of money" required by an order or judgment in a divorce action. Thus, contrary to the plaintiff's contention, the exhaustion precondition of section 245 does apply here, where the defendant failed to pay a sum of money in lieu of real property awarded to the plaintiff in an order of equitable distribution.

However, the plaintiff correctly contends that the record establishes her satisfaction of the exhaustion precondition with evidence demonstrating that less drastic enforcement measures would have been ineffectual. The plaintiff submitted extensive evidence in support of her motion to hold the defendant in contempt, demonstrating his pattern of divesting himself of his assets during the course of the earlier divorce litigation in 2000 through 2002, and during the present litigation; as a result, the defendant no longer held assets in his name against which exe-

cution could be obtained. Moreover, the defendant's suggestion that the plaintiff should have first settled a judgment upon the order of equitable distribution, and thereafter executed on the judgment, is without merit. It is undisputed that the defendant had transferred the Brooklyn and Queens properties that had been awarded to the plaintiff in the equitable distribution order, and that the purpose of the January 2010 order was to preserve the funds obtained from the sale of the real property. Therefore, the plaintiff satisfied the exhaustion precondition of Domestic Relations Law § 245 (*see Lopez v Ajose*, 33 AD3d at 976; *Turk v Turk*, 226 AD2d 448 [1996]; *cf. Snow v Snow*, 209 AD2d at 401 [precondition not satisfied where the defaulter had assets within the jurisdiction sufficient to satisfy arrearages]).

Accordingly, the record here fully supports the Supreme Court's order finding the defendant in civil contempt and imposing a civil sanction (*see Manning v Manning*, 82 AD3d 1057, 1058 [2011]; *Alderman v Alderman*, 78 AD3d at 620; *Hinkson v Daughtry-Hinkson*, 31 AD3d at 608).

The defendant's remaining contentions are either not properly before this Court or without merit.

Therefore, the order is affirmed.

SKELOS, J.P., LEVENTHAL and CHAMBERS, JJ., concur.

Ordered that the order is affirmed, with costs.