OPINION OF THE COURT
Catherine M. DiDomenico, J.
The decision and order on plaintiffs application is as follows:
Current Application
By postjudgment order to show cause filed on July 29, 2016 (motion sequence No. 014) plaintiff, former wife, seeks an order holding defendant, former husband, in civil contempt for selling a parcel of real property, located at i**_i** 27th Street, Brooklyn, New York, in violation of the “Automatic Orders” issued in conjunction with the parties’ underlying divorce proceeding. (See Domestic Relations Law § 236 [B] [2] [b].) Plaintiff alleges that defendant sold this property, unbeknownst to anyone involved in the divorce proceeding, in a secret transaction intended to defraud both the plaintiff and the court. *781 In furtherance of her request for a finding of contempt, plaintiff seeks to reopen the trial of this action to address the defendant’s contemptuous acts. In addition to issues of contempt, plaintiff seeks various other aspects of relief, including money judgments for unpaid support, distributive, and counsel fee awards.
Defendant has submitted written opposition to plaintiff’s application although he openly admits to the facts pertinent to this court’s analysis. Having admitted the facts, the defendant’s sole argument in opposition is that the law somehow precludes the court from addressing the relief requested. In sum and substance, defendant argues that any claim that could have been raised during the underlying trial, should have been, and thus that plaintiff’s contempt claim merged into the judgment of divorce. While the defendant seems to acknowledge that reopening the trial might cure this alleged procedural defect, he argues that the plaintiff has not established the relevant elements to reopen the trial. Defendant essentially argues that his ability to obfuscate the truth during the underlying divorce, and plaintiff’s inability to discover his wrongdoing at the time it was committed, should somehow grant him immunity in this postjudgment context. The defendant makes reference to plaintiff’s failure to exercise “due diligence” and claims that since she was unable to detect his secretive unlawful behavior, he should now be immune from any consequences of that behavior.
Plaintiff’s application appeared on this court’s calendar on September 15, 2016 for argument. During oral argument of the motion testimony was taken from both parties. When testifying, defendant brazenly admitted that despite the fact that he was under oath during the trial, and despite the fact that he had been advised of the automatic orders that prevented the distribution of property, and further despite the fact that the property at issue was one of the few assets owned by the parties, that on or around February 3, 2015 (mid trial) he sold the property at issue, and spent the proceeds for his own benefit. (Tr Sept. 15, 2016 at 5, 9.) When the court inquired as to why the defendant didn’t inform the court, his own attorney, or the plaintiff, that he had sold the property, he callously indicated that “no one asked him directly.” (Tr Sept. 15, 2016 at 14.) In addition to the sale of the property at issue, the defendant further admitted on the record that he has failed to pay the various support obligations, distributive awards, and counsel *782 fees awarded by this court. As the defendant has admitted to all of the facts relevant to the court’s analysis, a full evidentiary hearing was not required before rendering this decision and order. (See Barton v Barton, 137 AD3d 723 [2d Dept 2016].)
Procedural History
Due to the unique nature of the current proceeding, the court finds that a brief history of the underlying divorce is appropriate. The parties to this action litigated, for a period of over two years, one of the most bitterly contested proceedings that have appeared before this part. During trial, plaintiff credibly testified as to a history of domestic violence, including physical, emotional, and economic abuse together with a pattern of controlling behavior. This pattern of domestic violence ultimately resulted in the issuance of a five-year order of protection.
During the underlying divorce proceeding the defendant, then husband, consistently evidenced that he had little regard for court orders, or the law in general. In one brazen example, detailed in this court’s decision after trial, the defendant traveled to the State of Georgia, and attempted to purchase a firearm in violation of this court’s temporary order of protection. Due to this admitted violation of the court’s order, defendant was found to be in criminal contempt, and ordered to pay a fine. (See 48 Misc 3d 1228[A], 2015 NY Slip Op 51302[U] [Sept. 1, 2015].)
In addition to the contemptuous act of attempting to purchase a firearm, defendant consistently failed to comply with various other orders of the court, including his obligation to pay pendente lite maintenance. Moreover, defendant failed to comply with the court appointed business evaluator, which resulted in a failure of the plaintiff to prove the value of his trucking business at trial. In accordance with this consistent pattern of disregard for the plaintiff, the applicable law, and the court’s orders, the defendant now openly admits that while the trial was ongoing, he violated the automatic orders set forth in Domestic Relations Law § 236 by selling one of the few remaining assets of the parties without the consent of plaintiff or the court.
Applicable Law
In order to prevail on a motion for civil contempt, the moving party must prove: (1) the existence of a clear and lawful *783 mandate of the court; (2) that the party alleged to have disobeyed the order was aware of its terms; and (3) that the moving party’s rights were prejudiced. (See Coyle v Coyle, 63 AD3d 657 [2d Dept 2009]; see also Keller v Keller, 126 AD3d 940 [2d Dept 2015].) These elements must be established by the moving party by clear and convincing evidence. (See Matter of McCormick v Axelrod, 59 NY2d 574 [1983]; see also Matter of Hughes v Kameneva, 96 AD3d 845 [2d Dept 2012].) While “willfulness” is an essential element for a finding of “criminal contempt,” the mere act of disobedience, regardless of motive, is sufficient to establish “civil contempt” if such disobedience “defeats, impairs, impedes, or prejudices the rights or remedies of a party.” Therefore, a showing of willfulness is unnecessary for a finding of civil contempt. (El-Dehdan v El-Dehdan, 114 AD3d 4 [2d Dept 2013]; see also Yalkowsky v Yalkowsky, 93 AD2d 834 [2d Dept 1983].)
Plaintiff seeks contempt pursuant to Judiciary Law § 756 and, as necessarily related, Judiciary Law § 753. This distinction is pertinent because Domestic Relations Law § 245, which addresses contempt in the context of matrimonial proceedings, has been recently modified. At the time plaintiff’s motion was filed, a party seeking contempt pursuant to Domestic Relations Law § 245 (for the nonpayment of funds) had an obligation to show that all less drastic remedies have been exhausted or would be ineffectual. (See Wolfe v Wolfe, 71 AD3d 878 [2d Dept 2010].) However, the New York State Legislature has recently removed this obligation when it comes to the nonpayment of funds mandated by a judgment of divorce. (See Domestic Relations Law § 245, as amended by L 2016, ch 365.) This amendment to the Domestic Relations Law was made effective “immediately” and is intended to “apply to all actions whenever commenced as well as all judgements or orders previously entered.” (L 2016, ch 365, § 2.) While Domestic Relations Law § 245, as it existed at the time when plaintiff’s motion was filed, included language regarding “alternative remedies,” no such language appears in the Judiciary Law. (See Judiciary Law §§ 756, 753.)
Upon a finding of civil contempt, and a failure to purge that contempt, the court may impose a period of incarceration. (See Matter of Rubackin v Rubackin, 62 AD3d 11 [2d Dept 2009].) This period of incarceration will cease if the contemnor commits the affirmative act required by the purge condition. (See New York City Tr. Auth. v Transport Workers Union of Am., *784 AFL-CIO, 35 AD3d 73 [2d Dept 2006].) As the contemnor may purge his contempt at any time, he effectively “carries the keys of his prison in his own pocket.” (International Union, United Mine Workers of Am. v Bagwell, 512 US 821, 828 [1994].)
Decision
At the onset, the court notes that the defendant does not contradict any of the facts relevant to plaintiff’s application for contempt. Defendant does not deny that he received the automatic orders at the commencement of this action. (Aff in opp at 2.) Defendant further openly admits that he sold the warehouse located at 1**-1** 27th Street, Brooklyn, New York, without advising his attorney, plaintiff’s attorney, or the court of the same. (Tr Sept. 15, 2016 at 4.) Finally, defendant admits that while he had no authority to sell the property in the first place, he took the additional contemptuous action of using the proceedings for his own bills and debts. (Tr Sept. 15, 2016 at 9.)
Defendant instead argues that, as a matter of law, plaintiff is somehow prohibited from seeking a finding of contempt as all claims that could have been raised during the trial, should have been, and thus that any application for contempt is precluded under the doctrine of merger. This court finds defendant’s arguments to be wholly unpersuasive, irrevelant, and contrary to both fundamental rules of equity and fairness.
First and foremost, it is worth noting that while the plaintiff theoretically could have known about the defendant’s actions (if she were omniscient), she still had a right to rely upon her husband’s obligation to provide truthful testimony at trial. Moreover, while the defendant alludes to concepts of “due diligence” on the part of plaintiff’s counsel, the court notes that the property was unlawfully sold during trial, long after the discovery period ended,[1] so any reasonable investigation would have concluded well before the sale. Finally, any failures on the part of plaintiff to discover that the property was sold were wholly caused by the actions of the defendant, and not by a lack of due diligence on the part of plaintiff’s attorney. Therefore, any finding that plaintiff is somehow legally prohibited from seeking a contempt finding would fly in the face of basic fairness and would arguably be against public policy.
*785 Plaintiff, apparently anticipating the defendant’s merger argument, requests in the alternative, that the court “re-open” the trial to address the defendant’s contemptuous acts. Defendant, in opposition, argues that the plaintiff has not met the appropriate legal standard to reopen a trial, including a showing of due diligence. (See Sieger v Sieger, 51 AD3d 1004 [2d Dept 2008].) While the court has already found that due diligence is irrevelant based upon the fact that the defendant’s contemptuous actions created this situation, the court now further rules that reopening the trial is unnecessary to grant the relief requested by the plaintiff.
The general purpose of a trial, or a hearing, is to address and determine issues of fact. (See generally Matter of Lagani v Li, 131 AD3d 1246 [2d Dept 2015].) As the defendant has openly admitted to all of the pertinent facts, a reopening of the trial would be unnecessary, and would only serve to cause delay and additional legal fees for both parties. (See 1319 Third Ave. Realty Corp. v Chateaubriant Rest. Dev. Co., LLC, 57 AD3d 340 [1st Dept 2008].) If the court were to reopen the trial for the limited purpose of taking testimony regarding the issue of contempt, the testimony would be identical to the admissions made by the defendant on the record of September 15, 2016. Accordingly, plaintiff’s application to reopen the trial is hereby denied as unnecessary. Moreover, to reopen this trial would necessarily require the court to revisit issues of domestic violence, counsel fees, equitable distribution, and maintenance in light of the defendant’s contemptuous actions, while serving to provide nothing relevant to the contempt issue currently before the court.
Now, after consideration of the evidence submitted by plaintiff in support of her application, and in light of the admissions made by the defendant on the record, this court finds that plaintiff has met her burden of establishing, by clear and convincing evidence, that the defendant knowingly violated the automatic orders set forth in Domestic Relations Law § 236 (B) (2) (b). Moreover, plaintiff has established that her rights have been prejudiced as a result of defendant’s blatant noncompliance with those orders. (See Tarone v Tarone, 104 AD3d 760 [2d Dept 2013].) In this regard the court notes that pursuant to this court’s decision after trial, and the resulting judgment of divorce, plaintiff was entitled to one half (50%) of any net proceeds from the sale of the warehouse at issue. (See 48 Misc 3d 1228[A], 2015 NY Slip Op 51302[U] [Sept. 1, 2015].)
*786 Alternative Remedies
As indicated above, the applicability of the “exhaustion precondition” is not clear under the unique facts of this matter. Generally, the necessity of addressing alternative remedies is discussed in appellate case law involving the nonpayment of maintenance and child support. (See e.g. Tarone v Tarone, 104 AD3d 760 [2013]; see also Jones v Jones, 65 AD3d 1016 [2d Dept 2009].) However, “alternative remedies” have also been addressed in other matters having to do with real property and equitable distribution rights. (See El-Dehdan v El-Dehdan, 114 AD3d 4 [2d Dept 2013].) In any event, as the exhaustion precondition originates from Domestic Relations Law § 245, and that aspect of the statute has recently been removed by legislative action, the court finds that alternative remedies no longer need to be satisfied, or deemed ineffectual before a contempt finding can be made. (See Judiciary Law §§ 756, 753; see also Domestic Relations Law § 245, as amended.)
While no longer required by statute, it is worth noting that the defendant has negated any alternative remedy available to plaintiff, as not only did he sell the property at issue in violation of the directives of this court, he further expended all of the proceeds for his own benefit. Defendant testified that “nothing remains” of the proceeds. (Tr Sept. 15, 2016 at 9.)
Contempt
After consideration of the credible evidence offered by the plaintiff, and in light of the admissions made by the defendant, this court finds that the plaintiff has met her burden, and has established the elements of civil contempt by clear and convincing evidence. (See Manning v Manning, 82 AD3d 1057 [2d Dept 2011]; see also Soehngen v Soehngen, 58 AD3d 829 [2d Dept 2009].) Accordingly, the court hereby finds the defendant to be in contempt of the automatic orders that were served at the commencement of the underlying divorce action. Moreover, the defendant’s sale of marital property and the expenditure of the proceeds of sale was clearly calculated to, and/or actually did, defeat, impair, impede, or prejudice the rights of the plaintiff. (See Stempler v Stempler, 200 AD2d 733 [2d Dept 1994].) Plaintiff’s motion to hold defendant in civil contempt is hereby granted.
Purge Conditions
The party in contempt must be given an opportunity to perform the act which is still within his power to perform. (See *787 Wides v Wides, 96 AD2d 592 [2d Dept 1983]; see also Judiciary Law § 774.) Therefore, the defendant shall be given an opportunity to purge the contempt finding, on or before December 16, 2016.
Generally, when dealing with nonpayment of support, a purge condition takes the form of the amount of arrears owed. (See Cutroneo v Cutroneo, 140 AD3d 1006 [2d Dept 2016]; see also Diaz v Diaz, 129 AD3d 658 [2d Dept 2015].) However in the unique circumstances present here, the setting of a purge amount is more difficult. The defendant claims that he sold the property at issue for $1,600,000, from which he received net proceeds of “$300,000 and change” after the payment of mortgages and expenses. However, plaintiff contests this amount, and claims that in her opinion, the defendant likely received proceeds in excess of a million dollars. (Tr Sept. 15, 2016 at 16.)
To address this alleged discrepancy, plaintiff’s attorney requested an accounting of the sale proceedings, and that application was granted by short form order dated September 15, 2016. Under the terms of that order, defendant was directed to provide all closing documents, together with an accounting of expenses paid, to both plaintiff, and the court. Despite being given 20 days to obtain and prepare said documents, nothing has been received by the court, which further evidences the defendant’s complete disregard for court orders. However, as plaintiff’s application for contempt has been granted, the court is required to set a purge amount with the information it currently has. Accordingly, the purge condition shall be the sum of $150,000. This amount represents the plaintiff’s one-half share of the proceeds that the defendant admits that he received from the sale. (See tr Sept. 15, 2016 at 11.) This purge amount shall not in any way preclude plaintiff from seeking 50% of any amount that defendant actually received in excess of $300,000 if that amount can be established in the future by the mandated accounting or any investigation conducted by plaintiff.
The parties and counsel are hereby directed to appear before the court on Friday, December 16, 2016 at 9:30 a.m. In the event that defendant fails to purge his contempt by paying the sum of $150,000 by bank check or other certified funds on or before this date, he will be committed to the custody of the New York City Department of Correction to serve six months of consecutive weekends of incarceration. (See Cutroneo v Cutro *788 neo, 140 AD3d 1006 [2d Dept 2016]; see also Matter of Nancy R. v Anthony B., 121 AD3d 555 [1st Dept 2014]; Carlin v Carlin, 108 AD3d 493 [2d Dept 2013].) A period of weekend incarceration, as opposed to straight time, is to allow defendant to continue making support payments during his period of incarceration. In the event that such payments are not made on an ongoing basis, the court will entertain application for a modification to straight time incarceration. Defendant’s failure to appear on December 16, 2016 will result in a warrant being issued for his arrest.
Money Judgments
In addition to seeking a finding of contempt for the defendant’s admitted contemptuous sale of the Brooklyn warehouse, plaintiff seeks money judgments for various unpaid sums under the decision of this court and the resulting judgment of divorce. Defendant does not specifically oppose the plaintiff’s application for money judgments, other than offering a self-supporting and conclusory statement that he cannot afford to pay what the court has ordered him to pay.
Accordingly, after consideration of the motion papers filed by plaintiff, together with the opposition filed by the defendant, and after considering the argument placed on the record, together with defendant’s admissions of nonpayment (tr Sept. 15, 2016 at 18-26), the court hereby grants plaintiff’s application for money judgments as follows: (1) plaintiff is granted a money judgment in the amount of $18,500 representing a distributive award in the judgment of divorce; (2) plaintiff is granted a money judgment in the amount of $38,000 representing unpaid maintenance;[2] (3) plaintiff is granted a money judgment in the amount of $1,374 representing one missed child support payment from December of 2015; (4) plaintiff is granted a money judgment in the amount of $5,110 representing missed installment payments towards a $38,500 distributive award; (5) plaintiff is granted a money judgment in the amount of $7,191 representing yet another unpaid distributive award; and (6) finally, plaintiff’s counsel is hereby granted a money judgment in the amount of $35,539 representing unpaid *789 counsel fees previously awarded. In total, plaintiff is entitled to a money judgment in the combined amount of $70,175 and plaintiff’s counsel is entitled to a money judgment in the sum of $35,539. Plaintiff is hereby directed to prepare the money judgment, or judgments, as indicated herein, and serve the same on defendant’s counsel with notice of settlement. The court will sign the judgments on the settlement date if no valid counter judgment is received.
In addition to the above, plaintiff seeks a money judgment in the amount of $1,587 for the defendant’s alleged failure to make “car payments” and a judgment in the amount of $550 relating to missed “pendente lite” payments. While the defendant has openly admitted that he failed to pay the majority of the obligations addressed in this decision, he argues in his opposition papers, and on the record of September 15th that he made all of the required car payments and pendente lite payments. (Tr Sept. 15, 2016 at 24.) Accordingly, as defendant has raised an issue of fact regarding those payments, a hearing will be required to address plaintiff’s claim.
Counsel Fees
Plaintiff seeks an award of counsel fees in the amount of $2,700 in relation to the present contempt application. Defendant opposes this application on various procedural grounds arguing first that plaintiff’s retainer is defective, and second, that plaintiff’s counsel has failed to provide billing documentation sufficient to support a counsel fee award.
Pursuant to Domestic Relations Law §§ 237 (c) and 238 a party who is forced to file a contempt application in order to enforce the orders of the court is generally entitled to reimbursement of legal fees relating to that application. (See Hayes v Barroga-Hayes, 117 AD3d 794 [2d Dept 2014].)
For the detailed reasons set forth above, and after consideration of the totality of the circumstances, particularly the necessity of additional litigation due to defendant’s failure comply with court orders, plaintiff’s application for counsel fees has merit. (See Moore v Moore, 93 AD3d 827 [2d Dept 2012].) However, defendant is correct that the application must be denied at this time, regardless of merit, as plaintiff’s counsel has failed to provide any billing documentation whatsoever which would allow the defendant, or the court, to determine if the amount requested is properly supported. In order to receive an award of attorney’s fees there must be sufficient documenta *790 tion in the form of time records including the time expended relative to each service. (See Fackelman v Fackelman, 71 AD3d 724 [2d Dept 2010]; see also Darvas v Darvas, 242 AD2d 554 [2d Dept 1997].) Counsel’s affirmation in support of plaintiff’s application, which includes an approximation of time expended without supporting billing documentation, is insufficient to meet this burden. (See Barson v Barson, 32 AD3d 872 [2d Dept 2006]; see also Reynolds v Reynolds, 300 AD2d 645 [2d Dept 2002].)
While plaintiff’s application for counsel fees must be denied at this time, the court has reviewed plaintiff’s counsel’s retainer and found it to be in substantial compliance with court rules. (See Weissman v Weissman, 116 AD3d 848 [2d Dept 2014].) Defendant’s application for plaintiff’s application for counsel fees to be denied “with prejudice” is hereby denied as the error is procedural in nature. Plaintiff’s application for counsel fees is denied, without prejudice, to refiling with the proper supporting documentation.
Miscellaneous
Plaintiff’s application for “proof of compliance” with the aspect of the judgment of divorce which requires the plaintiff to obtain life insurance has been resolved by defendant’s admission on the record of September 15, 2016 that he has failed to do so. Defendant is hereby directed to obtain the mandated life insurance, or provide proof of his inability to do so, forthwith.
This constitutes the decision and order of the court in relation to motion sequence Nos. 007 and 008. Any issues raised in plaintiff’s motions but not specifically addressed herein or by prior short form order, are hereby denied.
Plaintiff may request a hearing, if necessary, for her application for money judgments not granted herein (as indicated above).

. The note of issue was filed on October 11, 2013, over a year before defendant sold the property mid trial.

. Plaintiff corrected her affidavit on the record and indicated that the amount set forth therein should have been $27,000 not $28,000. That affidavit was signed in early July 2016. Plaintiff established that the defendant did not pay maintenance in July (+$4,000), August (+$4,000) or September (+$4,000) but he did make a partial $1,000 payment (-$1,000) for total arrears of $38,000 (tr Sept. 15, 2016 at 18).